# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | | |
|---|---|---|
| TOMMY D. GARREN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 3:17-cv-00149-CLC-CCS |
| | ) | |
| CVS PHARMACY, INC.; | ) | Judge Curtis L. Collier |
| TENNESSEE CVS PHARMACY, LLC; | ) | |
| and CVS Rx SERVICES, INC., | ) | Mag. Judge C. Clifford |
| | ) | Shirley, Jr. |
| Defendants. | ) | |

**PLAINTIFF TOMMY D. GARREN'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION**

Plaintiff Tommy C. Garren (hereinafter "Garren") hereby responds in opposition to Defendants' Motion to Dismiss and to Compel Arbitration (Doc. 16). In support, Garren states the following:

## I-II. RESPONSE TO INTRODUCTION AND RELEVANT PROCEDURAL BACKGROUND.

Garren opted out of Defendant CVS's arbitration program pursuant to Defendants' training and instructions on how to opt out of the program. (Ex. A – Decl. of Tommy D. Garren, ¶¶ 2-4; Doc. 16, pp. 4-5.) The training module on CVS's Arbitration of Workplace Legal Disputes Policy ("arbitration policy") instructs employees to mail a letter to CVS Health, P.O. Box 969, Woonsocket, RI 02895 expressing their intent to opt-out of arbitration within thirty (30) days of viewing the

policy's opt-out procedures. (*Id.*) Garren mailed the opt-out letter at the Tellico Plains, Tennessee Post Office 7-10 days after he first viewed CVS's training on the arbitration program and opt-out procedures. (Ex. A – Decl. of Tommy D. Garren, ¶¶ 2-4.) CVS's arbitration training and policy do not state that CVS had to *receive* the letter, or that Garren had to provide proof of CVS's receipt, only that Garren had to mail the opt-out letter within thirty (30) days of the training. (*Id.*; Doc. 16, pp. 4-5.)

Defendants fail to dispute Garren's compliance with the opt-out procedures. Defendants fail to produce any signed arbitration agreement or any personalized information conclusively showing that Garren agreed to arbitration. Defendants merely produce generic copies of CVS's arbitration policy and print screens of CVS's online arbitration training module that are not specific to Garren and do not reference him by name. (Doc. 16-1, Exs. A-C, pp. 8-47.)

The case of *Roy Hall v. CVS Health Corp.*, *et al.*, 2:17-cv-00289-KOB, currently pending in the Northern District of Alabama, involves the same CVS arbitration policy and opt out procedure. Mr. Hall opted out of the new arbitration agreement by mailing his opt-out letter to CVS Health, P.O. Box 969, Woonsocket, RI 02895 within 30 days of viewing the arbitration training. CVS claimed Mr. Hall did not opt out. Robert Bailey, CVS's Director of Talent Management who provided a declaration in the present case, gave deposition testimony in *Hall* as CVS's Rule

30(b)(6) witness. Mr. Bailey admitted that he could not refute Mr. Hall's testimony that he mailed the opt-out letter in compliance with CVS's policy and training instructions. (Ex. 2 - Robert Bailey Depo., 36:10-39:7.) Mr. Bailey also testified that he could not conclusively deny that CVS received Mr. Hall's opt-out letter at the designated post office box. (*Id.* at 45:1-23.) Similarly, Bailey cannot and does not refute that Garren mailed his opt-out letter to the Woonsocket post office box pursuant to the CVS opt-out procedures. (Doc. 16-1.) Bailey has not and cannot provide any admissible evidence of a chain of custody from the off-site post office box to CVS's mailroom, through its sorting and distribution processes, to the individuals ultimately responsible for entering receipt of the arbitration opt-out letters into CVS's system. *Id.*

CVS attempts to bolster its chain of custody problems with a declaration of CVS Paralegal Allison Jansen; however, Ms. Jansen's declaration also lacks personal firsthand knowledge. (*See* Doc. 16-2.) Like Mr. Bailey, Ms. Janson does not profess to personally retrieve CVS's mail from the post office box, transport the mail to CVS's corporate office, sort it in the mailroom, or deliver it to the individuals ultimately responsible for logging receipt of the arbitration opt-out letters. (*Id.*) Indeed, Ms. Jansen does not even claim to have personally scanned and entered every opt-out letter received from CVS employees. (*Id.*)

In the *Hall* case, CVS designated Paralegal Manager Kristen Rourke as a Rule 30(b)(6) witness along with Mr. Bailey. (Ex. 3 - Kristen Rourke Depo., 3:11-16, 20:18-19.) Ms. Rourke testified that CVS literally received "thousands" of opt-out letters from employees during the relevant time period, specifically in October-December 2014, when the new policy of arbitration was rolled out to employees in an online training module. (*Id.* at 22:19-23:2.) An unknown number of mailroom employees whose names are unknown picked up CVS's mail from the Woonsocket post office. (*Id.* at 13:7-17.) The opt-out letters were "bound together by a rubber band or a bucket or basket" before being sorted and delivered to either CVS's Legal Department or its Human Resources Shared Services Department. (*Id.* at 13:7-15:17, 28:4-11.) Ms. Rourke, as CVS's Rule 30(b)(6) witness, could not state with certainty who opened each opt-out letter on which date. (*Id.* at 15:2-17.) Just like Ms. Rourke and Mr. Bailey, Ms. Jansen lacks personal, firsthand knowledge of CVS's chain of custody in receiving employee opt-out letters and ensuring that each one is accurately entered. (*See* Doc. 16-2.) More importantly, neither Mr. Bailey nor Ms. Jansen can dispute that Mr. Garren mailed his opt-out letter in accordance with CVS's opt-out procedure, which merely requires him to mail his letter within thirty (30) days of reviewing the online arbitration training module and does not require proof of CVS's receipt.

Defendant CVS drafted its own policy language and arbitration opt-out procedures. The plain language of its policy and procedures do not require employees to use certified mail or maintain any other proof of CVS's receipt of their opt-out letters. (Doc. 16-1, p. 6.) Had CVS required such evidence, it could have clearly drafted its policy and procedures to say so. CVS's policy merely states that the letter must be "postmarked" within thirty (30) days of the training to be effective. (*Id.*, Ex. 2- Bailey Depo. at 38:10-39:7.) Mr. Bailey reluctantly admitted in his deposition that Mr. Hall could not be reasonably expected to obtain a copy of the "postmark" on the stamped envelope after he had handed the letter over to the post office for mailing. (*Id.* at 36:2-38:3.) Garren certainly cannot be expected to do so either. Defendants' Motion to Dismiss and to Compel Arbitration is unsupported and due to be denied.

### III. RESPONSE TO LEGAL ARGUMENT

The Federal Arbitration Act ("FAA") requires the existence of a valid, written agreement to arbitrate. 9 U.S.C. § 4. In determining whether to compel arbitration, the Court must engage in a limited review to determine whether the dispute is arbitrable and whether a valid agreement exists. *E.g.*, *Amos v. Lincoln Prop. Co.*, No. 3:17-CV-37, 2017 WL 2628820, at *4–5 (M.D. Tenn. June 19, 2017) (denying motion to compel arbitration where genuine issues of material fact existed as to the validity of an agreement to arbitrate, where the alleged agreement was unsigned).

5

Defendants' generic, non-individualized training course and policy that it offered as evidence do not contain an electronic signature of Mr. Garren or otherwise constitute undisputed evidence of any agreement to arbitrate. In a similarly-factual case, the Sixth Circuit refused to compel arbitration due to the obvious inability of the moving party to show a manifestation of the intent to arbitrate:

> The wisdom behind an employer's desire to have objective evidence of an employee's assent to arbitration is clear: an acknowledgment form, signed after an employee has been given a copy of an arbitration agreement, can serve as ironclad proof that an employee was reasonably notified of an arbitration agreement. Put another way, the acknowledgment form decreases the possibility that [the employer] might have an employee who has never seen or signed any arbitration documents.

*Hergenreder v. Bickford Senior Living Group*, LLC, 656 F.3d 411, 415, 421 (6th Cir. 2011).

If the generic documentation produced by Defendants were adequate evidence of an enforceable arbitration agreement, every employer could compel arbitration by merely filing their blank, unsigned arbitration policies and training courses with the Court without showing the required "agreement" and "manifestation of intent" to arbitrate as required under the FAA and this Circuit. The documents produced by Defendants simply do not evidence a valid written arbitration agreement, particularly in light of Garren's irrefutable testimony that he opted out pursuant to CVS's opt-out procedures. Garren's testimony and Amended Complaint must be taken as true at the Motion to Dismiss stage. (FED. R. CIV. P. 12(b)(1), 12(b)(6)).

6

The enforceability of CVS's alleged agreement to arbitrate is further undermined by recent case law rescinding CVS's arbitration program. On May 4, 2016, the National Labor Relations Board ordered CVS to cease and desist from using the very training module and policies at issue in this case because they violate Section 7 of the National Labor Relations Act. (Ex. 4, pp. 1-3.) The Board ordered CVS to notify all current and former employees that Course 800305, the CVS Health Colleague Guide to Arbitration, the Arbitration of Workplace Legal Disputes Policy, and the CVS Health Arbitration Agreement "in all of their forms" were no longer in effect and were rescinded. CVS failed to comply with the NLRB's Order and continues to actively use Course 800305 in violation of the Act. (Ex. 2 – Robert Bailey Depo., 14:12-20.)

Even assuming the NLRB's cease and desist Order has no effect on the alleged agreement's enforceability, or even assuming CVS's generic, non-individualized training module or policy could constitute a valid, written arbitration agreement between Garren and CVS, the undisputed evidence shows that Garren opted out of CVS's arbitration program and cannot now be compelled to arbitrate. Defendants' Motion to Dismiss and to Compel Arbitration is due to be denied.

## IV. CONCLUSION

For all of the reasons set forth herein, Plaintiff Tommy D. Garren respectfully requests the Honorable Court to deny Defendants' Motion to Dismiss and to Compel Arbitration and award such other or further relief the Court deems just and proper.

Respectfully submitted,

/s/ Heather M. Collins
Heather M. Collins
Anne Hunter

**OF COUNSEL:**

**COLLINS & HUNTER, PLLC**
7000 Executive Center Drive
Suite 320 (Bldg. #2)
Brentwood, Tennessee 37027
Office: (615) 724-1996
heather@collinshunter.com

Alicia K. Haynes
Sonya C. Edwards
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama 35226
Office: (205) 879-0377
akhaynes@haynes-haynes.com
scedwards@haynes-haynes.com

Attorneys for Plaintiff Tommy D. Garren

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve such filing to the following counsel of record:

Rachel R. Rosenblatt, Esq.
LITTLER MENDELSON, P.C.
333 Commerce Street, Suite 1450
Nashville, Tennessee 37201
rrosenblatt@littler.com

So certified, this the 5th day of  October,  2017.

/s/ *Heather M. Collins*
Of Counsel