UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TOMMY D. GARREN, | ) |
| *Plaintiff*, | ) Case No. 3:17-cv-149 |
| v. | ) Judge Collier |
| CVS HEALTH CORPORATION, *et al.* | ) Magistrate Judge Poplin |
| *Defendants*. | ) |

# **M E M O R A N D U M**

Before the Court is a motion by Defendants (CVS Health Corporation; CVS Pharmacy, Inc.; Tennessee CVS Pharmacy, LLC; and CVS Rx Services, Inc.) to dismiss the amended complaint (Doc. 8) of Plaintiff, Tommy D. Garren, and compel arbitration of Plaintiff's claims. (Doc. 15.) Plaintiff responded in opposition (Doc. 22), and Defendants replied (Doc. 23). For the following reasons, the Court will **DENY** Defendants' motion.

## I. BACKGROUND

Plaintiff was employed by Defendants as a pharmacist in the state of Tennessee.[1] In October 2014, Defendants introduced an "Arbitration of Workplace Legal Disputes Policy" (the "Policy"). The Policy stated, in part, as follows:

1. **Mutual Obligation to Arbitrate**. Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

---
[1] The parties do not specify which Defendant entity was Plaintiff's employer.

2. **Claims Covered by This Policy**. Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.

   Covered Claims include but are not limited to disputes regarding . . . leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

   Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy, except as provided in the section below regarding the Class Action Waiver.

(Doc. 16-1 at 9.)

Defendants required their employees, described as "colleagues," to participate in a computerized training course regarding the Policy (the "Course"). Each employee had to log into Defendants' training system using unique credentials that allowed Defendants to track and record their respective participation in the Course.

The third slide of the Course required employees to open an Arbitration Policy Guide (the "Guide"). (Doc. 16-1 at 16.) The Guide could be reviewed electronically within the training system or printed in hard copy for the employee to read and keep. An employee could not proceed past the third slide without opening the Guide. (Doc. 16-1 at 4, ¶ 10.) The Guide included the following information:

**Colleagues' Rights**

. . .

Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues'

2

> participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy. If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before. Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.
>
> **How to Opt Out**
>
> In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the colleague first views or receives the policy. **Please note, sending in a timely notice is the only way to opt out**. A colleague cannot opt out by refusing to complete training or attend meetings about the policy.
>
> CVS Health will not tolerate retaliation against any colleague who decides to opt out.

(Doc. 16-1 at 41 (emphasis in original).)

After opening the Guide, an employee could proceed to the remaining slides of the Course. The fifth slide of the Course contained a list of acknowledgments and instructed the employee to click a "Yes" button at the bottom of the slide to accept the acknowledgements and continue. (Doc. 16-1 at 31.) The acknowledgments included the following:

> By clicking the "Yes" button below, I am acknowledging and agreeing:
>
> - that I have carefully read the CVS Health Policy, "Arbitration of Workplace Legal Disputes" (the "Policy") and understand that it applies to me;
>
>   . . .
>
> - that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
>
> - that, to opt out, I must mail a written, signed, and dated letter, stating clearly that I wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy;

3

>> . . .
>> - that my click of the "Yes" button creates an electronic signature that is legally binding.

(Doc. 16-1 at 31.)

The parties agree Plaintiff completed the Course on or about October 11, 2014. (Doc. 16-1 at 6, ¶ 15; *id.* at 51; Doc. 22-1 ¶ 2.) They disagree, however, about whether Plaintiff opted out of the Policy. Defendants have submitted declarations from two employees stating Plaintiff did not opt out, in that Defendants have no record of ever having received an opt-out notice from Plaintiff. (Doc. 16-1 at 6–7, ¶ 16; Doc. 16-2 at 2, ¶ 4.) Plaintiff has submitted his own declaration stating he did opt out, by mailing Defendants a letter expressing his desire to opt out approximately seven to ten days after he completed the Course. (Doc. 22-1 ¶ 3.)

Defendants terminated Plaintiff's employment approximately one year later. (Doc. 8 ¶ 71.) Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and filed this action after receiving his Notice of Right to Sue from the Commission. (*Id.* ¶¶ 11–12.) He asserts causes of action for discrimination, harassment, and retaliation based on age and disability, as well as failure to accommodate based on disability. (*Id.* at 13–18.) Defendant now moves to have Plaintiff's complaint dismissed and his claims referred to arbitration under the Policy.

## II. <u>**STANDARD OF REVIEW**</u>

In deciding a motion to compel arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq.*, a district court must

> hear the parties, and upon begin satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . . If the making of the

arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. A district court's first task is therefore to "determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos., Inc. v. Simmons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

The party opposing arbitration has the burden to show a genuine issue of material fact as to whether the agreement to arbitrate is valid. *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). The necessary showing is similar to what is required to defeat a motion for summary judgment. *Great Earth*, 288 F.3d at 889. The district court must view all facts and any inferences in the light most favorable to the party opposing arbitration "and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (reciting standard of review on summary judgment)).

### III. DISCUSSION

Under the FAA, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Moreover, the provisions of the FAA are mandatory: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3–4). And federal courts have long recognized a "liberal federal policy favoring

5

arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Before ordering arbitration, however, a district court must make the threshold determination of whether a valid contract or a valid arbitration clause within a contract encompasses the underlying claim. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted) (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). And "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Id.* (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). The parties may, for example, clearly and unmistakably provide otherwise by including a clause in their agreement delegating such gateway issues about the arbitrability of a particular dispute to the arbitrator. *See Rent-A-Center*, 561 U.S. 63, 68–69 (2010).

A dispute is arbitrable if (1) "a valid agreement to arbitrate exists between the parties" and (2) "the specific dispute falls within the substantive scope of that agreement." *Hergenreder v. Bickford Senior Living Grp.*, LLC, 656 F.3d 411, 416 (6th Cir. 2011) (citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). A federal court sitting in diversity applies the contract law of the state in which the arbitration agreement was allegedly formed to determine whether the agreement exists and is legally enforceable. *Hergenreder*, 656 F.3d at 416 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)).

Defendants argue that Plaintiff has failed to show a genuine issue of material fact as to whether there is a valid agreement to arbitrate, and that the Court in fact should not even consider

whether there is a valid agreement to arbitrate because the Policy commits gateway questions of arbitrability to the arbitrator. The Court addresses the latter threshold issue first.

### A. Delegation of Gateway Issues of Arbitrability to the Arbitrator

Defendants argue the Court should not consider whether the dispute is arbitrable because the Policy commits gateway determinations of arbitrability to the arbitrator. (Doc. 16 at 8.) Defendants are correct that parties are free to delegate gateway determinations of arbitrability to the arbitrator. *See Granite Rock*, 561 U.S. at 297; *Rent-A-Center*, 561 U.S. at 68–69. As Defendants point out, when a party who opposes arbitration challenges the validity of the entire agreement to arbitrate, but does not specifically challenge the validity of the delegation provision, the Court should refer the dispute over arbitrability to the arbitrator. (Doc. 16 at 8 (citing *Rent-A-Center*, 561 U.S. at 72).)

But Defendants miss a critical distinction. The rule they invoke applies only to disputes about the validity of an agreement to arbitrate, not disputes about the existence of an agreement in the first place. The Supreme Court made this distinction in *Rent-A-Center*. There, the party opposing arbitration admitted he had signed the arbitration agreement but argued it was unenforceable because it was unconscionable. *Rent-A-Center*, 561 U.S. at 65–66. As the Court stated, "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and . . . we address only the former." *Id.* at 70 n.2. The Court made the same distinction in another case which held it was for the arbitrator to consider the contract's validity unless the challenge was to the disputed arbitration clause itself. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). There, the party opposing arbitration also admitted signing a contract containing an arbitration clause, but argued the entire contract was void for illegality. The Court clarified the limits of its holding as follows:

7

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract.

*Id.* at 444 n.1.

In each of the other cases Defendants cite, the same distinction holds: the challenge was to the validity of the contract, not to whether a contract had been formed in the first place. *See Dean v. Draughons Junior College, Inc.*, No. 3:12-cv-0157, 2012 WL 3308370, at *7 (M.D. Tenn. Aug. 13, 2012)[2] (plaintiffs argued contracts were unconscionable); *Law Offices of Daniel C. Flint, P.C. v. Bank of Am., N.A.*, No. 15-13006, 2016 WL 1444505, at *4 (E.D. Mich. April 13, 2016) (plaintiff argued arbitration clause was invalid and unconscionable); *May v. Nationstar Mortg. LLC*, No. 3:12-CV-43, 2012 WL 3028467, at *9 (N.D.W.V. July 25, 2012) (plaintiff argued contract was unconscionable). Defendants have cited no authority in which a party who denied ever entering the relevant contract at all was forced to arbitrate the issue of arbitrability.

Here, Plaintiff does not argue that the alleged agreement to arbitrate is void, voidable, or invalid; he argues it was never made. It is therefore for this Court to decide whether an agreement to arbitrate exists between the parties.

### B. Existence of an Agreement to Arbitrate

Defendants suggest that the law of the state of Tennessee governs whether the parties agreed to arbitrate (Doc. 16 at 9), and Plaintiff does not disagree. Under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based on sufficient consideration, free from fraud or undue influence, not against public policy and

---

[2] Defendants' attention is invited to the requirement that citations to unreported cases available on a widely used electronic database should include, among other information, the case docket number and the full date of the decision. *The Bluebook: A Uniform System of Citation*, Rule 10.8.1 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

sufficiently definite to be enforced." *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). "The legal mechanism by which parties show their assent to be bound is through offer and acceptance." *Moody Realty Co. v. Huestis*, 237 S.W.3d 666 at 674 n.8 (Tenn. Ct. App. 2007).

The only disputed element of contract formation in this matter is mutuality of assent. Defendants argue they made an offer of arbitration to Plaintiff by notifying him of the Policy through the Course on October 11, 2014, by informing him of how he could opt out, and by informing him that continuing his employment with Defendants without opting out would be acceptance of their offer. (Doc. 16 at 9.) Defendants argue Plaintiff accepted their offer in just that way—by continuing his employment without opting out within thirty days of taking the Course. (*Id.* at 9–10.)

Plaintiff does not dispute Defendants made him an offer to arbitrate. He does dispute that he accepted it. (Doc. 22 at 1–2.) Plaintiff asserts he followed Defendants' opt-out instructions by mailing a letter expressing his desire to opt out to the address Defendants indicated approximately seven to ten days after he took the Course. (*Id.*)

Plaintiff has met his burden of showing a genuine issue of material fact as to whether he opted out, and therefore as to whether the parties entered an agreement to arbitrate. *See Green Tree Fin.*, 531 U.S. at 91. Plaintiff's declaration states he "mailed a written, dated, and signed letter expressing [his] desire to opt out of the arbitration program to CVS Health, P.O. Box 969, Woonsocket, RI 02895," between approximately seven and ten days of taking the Course. (Doc. 22-1 ¶ 3.) This is the opt-out address stated in the Course and the Guide, and it is within the time limit Defendant required. (*See* Doc. 16-1 at 41, 31.) Plaintiff further describes how he

accomplished the mailing: "I personally hand-delivered my opt-out letter to the Tellico Plains, Tennessee post office to ensure that it was postmarked within 30 days in compliance with the policy." (Doc. 22-1 ¶ 3.)

Defendants argue Plaintiff has not met his burden because "he has not provided any proof that he provided notice to CVS by sending in an opt-out letter." (Doc. 23 at 8–9.) Defendants refer to the fact that Plaintiff has not offered any documentary proof, such as a copy of a letter or a mailing receipt. (*See id.* at 10.) Defendants rely on *Grynko v. Sears Roebuck & Co.*, No. 1:13-CV-2482, 2014 WL 66495 (N.D. Ohio Jan. 6, 2014), in which the district court held the plaintiff's affidavit, unsupported by other documentary evidence, was not enough to create a genuine issue of material fact that the plaintiff had mailed an opt-out notice in the face of the defendant's evidence that no opt-out notice had been received. But a declaration, made on personal knowledge, is sufficient to create an issue of fact under the current standard of review. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including . . . declarations . . . ."); *see also Great Earth*, 288 F.3d at 889 (standard to defeat motion to compel arbitration similar to standard to defeat motion for summary judgment). The Court therefore respectfully disagrees with the *Grynko* court regarding whether it is appropriate to weigh one side's evidence against another's at this stage and whether an affidavit or declaration can on its own to create a genuine issue of fact.

Defendants also argue Plaintiff's declaration is insufficient because he "did not submit any proof of proper postage or that the letter was appropriately addressed, or that he actually deposited it in the mail." (Doc. 23 at 10.) The Court sees no support for Defendants' claim of a lack of proof the letter was appropriately addressed; the address Plaintiff declares he used is the address stated in the Course and Guide. (*See* Doc. 22-1 ¶ 3; Doc. 16-1 at 41, 31.) The Court also disagrees

Plaintiff failed to provide proof of proper postage or an actual deposit of the letter in the mail. Plaintiff declares he "mailed a . . . letter" to the appropriate address, and further declares that he "personally hand-delivered" it to a specific post office "to ensure that it was postmarked within 30 days." (Doc. 22-1 ¶ 3.) He has not expressly stated he placed a stamp of the appropriate value on his letter or that he placed it in a mail receptacle. One might theorize that he "mailed" his letter without a stamp or that he hand-delivered it to an unwatched corner of the post office. But the Court must take all facts and reasonable inferences in Plaintiff's favor at this juncture. *See Great Earth*, 288 F.3d at 889. The Court therefore has no difficulty concluding Plaintiff has shown a genuine issue of material fact as to whether he placed a properly addressed, properly stamped, timely opt-out notice in the mail.[3]

In an additional attack on Plaintiff's proof that he opted out, Defendants argue it was a requirement of the Policy that an opt-out notice actually reach Defendants to be valid. (Doc. 10 at 8.) To be sure, Defendants would not have any way of knowing about an opt out if it did not reach them. But that is not how they crafted their offer. Neither the Guide nor the Course states that an opt-out notice must be received, and the Court at this stage is required to take all reasonable inferences in Plaintiff's favor, not Defendants'. *See Great Earth*, 288 F.3d at 889.

## IV.    CONCLUSION

Plaintiff has shown a genuine issue of material fact about whether he opted out of the Policy, and therefore he has shown a genuine issue of material fact as to the existence of an enforceable agreement to arbitrate. The Court will **DENY** Defendants' motion (Doc. 15)

---

[3] Defendants make this argument in discussing the mailbox rule, the presumption that a properly addressed letter that was deposited in the mail with sufficient postage was received by the addressee. Plaintiff has not sought to rely on the mailbox rule here; he has stated he complied with Defendants' opt-out instructions.

**WITHOUT PREJUDICE**.  This matter will proceed to a trial on the existence of an agreement to arbitrate.

**An appropriate Order will enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**