UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TOMMY D. GARREN, | ) |
| *Plaintiff*, | ) Case No. 3:17-cv-149 |
| v. | ) Judge Collier |
| CVS RX SERVICES, INC., *et al.* | ) Magistrate Judge Poplin |
| *Defendants*. | ) |

## **MEMORANDUM**

This matter is before the Court on the question of whether the trial scheduled for January 22, 2019 will be before a jury or will be conducted as a bench trial. Plaintiff, Tommy D. Garren, filed a memorandum supporting his right to a jury trial on November 8, 2018. (Doc. 32.) Defendants CVS Pharmacy, Inc., Tennessee CVS Pharmacy, LLC, and CVS Rx Services, Inc. filed a memorandum supporting their request for a bench trial on November 29, 2018. (Doc. 33).

**I.    BACKGROUND**

Plaintiff was employed by Defendants as a pharmacist until he was terminated in 2015.[1] He filed suit against Defendants[2] on April 20, 2017, asserting causes of action arising from his employment and termination. (Doc. 1 at 13–18.) His complaint included a jury demand. (*Id.* at 1, 19.) He filed an amended complaint on July 18, 2017, which also included a jury demand.

---

[1] The parties specify in their Proposed Final Pretrial Order that Defendant CVS Rx Services, Inc. was Plaintiff's employer. (Doc. 35.)

[2] The initial complaint named CVS Health Corporation, Inc. as a defendant. (Doc. 1.) The amended complaint substituted CVS Rx Services, Inc. (Doc. 8.)

(Doc. 8 at 1, 19.) Both the complaint and the amended complaint included the allegation that Plaintiff had "opted out of CVS's arbitration program." (Doc. 1 ¶ 75; Doc. 8 ¶ 75.)

On September 14, 2017, Defendants filed a motion to dismiss Plaintiff's amended complaint and compel arbitration of his claims under the Federal Arbitration Act (the "Act"), 9 U.S.C. §§ 1 *et seq.* (Doc. 15.) They asserted all of Plaintiff's claims were subject to arbitration pursuant to CVS's Arbitration of Workplace Legal Disputes Policy (the "Policy"). (Doc. 16 at 1–2.) Plaintiff responded on October 5, 2017, asserting again that he had opted out of the Policy and had therefore never entered into an agreement with Defendants to arbitrate any of his claims. (Doc. 22.) Plaintiff's response did not include a demand for a jury on any issue. (*See id.*)

On July 11, 2018, this Court found Plaintiff had shown a genuine issue of material fact about whether he had opted out of the Policy.[3] (Doc. 28.) The Court accordingly denied Defendants' motion to dismiss without prejudice and ordered the parties to proceed to trial on the existence of an agreement to arbitrate. (Doc. 29.) The Court held a scheduling conference on August 2, 2018 and set the matter for trial on January 22, 2019 "on the single issue of whether an agreement to arbitrate exists between the parties." (Doc. 31 ¶ 1.) During the scheduling conference, the parties disagreed about whether Plaintiff was entitled to a jury trial on the issue. The Court ordered Plaintiff to make an appropriate filing on or before November 8, 2018 if he wished to have the case tried before a jury and ordered Defendant to respond on or before November 29, 2018. (*Id.* ¶ 6(a).) The parties have submitted their briefs and the issue is now ripe.

---

[3] The party opposing arbitration has the burden to show a genuine issue of material fact as to whether the agreement to arbitrate is valid. *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). The necessary showing is similar to what is required to defeat a motion for summary judgment. *Great Earth Cos., Inc. v. Simmons*, 288 F.3d 878, 889 (6th Cir. 2002).

## II. THE FEDERAL ARBITRATION ACT

Under the Act, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Where a valid contract or arbitration clause exists and encompasses a party's claim, a district court presented with a request to arbitrate has no discretion, but must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4). The existence of an arbitration agreement is an equitable defense to a plaintiff's claims. *Stanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449, 452 (1935). Courts recognize a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The parties' dispute over Plaintiff's entitlement to a jury centers on 9 U.S.C. § 4, which states in full as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. **If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court**

3

**shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.** If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4 (emphasis added).

### III. DISCUSSION

Plaintiff argues that because he included a general jury demand in his pleadings, he is entitled to a jury trial on whether an agreement to arbitrate exists between him and Defendants. Plaintiff points out that a party who demands a jury but does not specify which issues should go to the jury "is considered to have demanded a jury trial on all issues so triable." Fed. R. Civ. P. 38(c). He also argues that his jury demand was made before the deadline set in the Act for a jury demand, "the return day of the notice of application," 9 U.S.C. § 4, which has been construed as the date on which a plaintiff's response is due to a motion seeking to dismiss an action because of an arbitration agreement.

Defendants counter that Plaintiff's jury demand was ineffective under the Act, under which he was supposed to have demanded a jury trial on the specific issue of arbitrability after Defendants filed their motion to dismiss but no later than the day Plaintiff's response to the motion was due. Defendants also argue the jury-demand language in the Act sets out specific procedures that supplant the jury-demand procedures under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 81(a)(6)(B) ("These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures: . . . 9 U.S.C., relating to arbitration.").

4

Each side cites persuasive authority for its position, including cases deciding the issue in the direction it favors. Defendants also assert, correctly, that their position is decidedly the majority one. (*See* Doc. 33 at 8 & n.2 (collecting cases); *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347 (7th Cir. 2017) (collecting cases).) There is no controlling authority on this issue within the Sixth Circuit however.[4] The Court therefore begins its analysis at the beginning.

A. **Source of Jury-Trial Right on Existence of Arbitration Agreement**

The first question the Court must consider is the source of the right to have a jury decide issues of arbitrability. The existence of an agreement to arbitrate is an equitable defense to litigation. *Stanferoke Coal*, 293 U.S. at 452. The Seventh Amendment to the Constitution preserves the right to a jury trial on legal claims, but it does not provide a right to a jury trial on equitable ones. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41–42 (1989). Thus, the Constitution does not guarantee a right to a jury trial on the existence of an arbitration agreement as a defense to litigation. *See, e.g.*, *P.J. Cheese*, 861 F.3d at 1350 n.20 (no Seventh Amendment right to jury trial on equitable defense of arbitrability).

The Act itself, however, does grant such a right. The Act states as follows in pertinent part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue . . . the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue. . . .

9 U.S.C. § 4; *accord P.J. Cheese*, 861 F.3d at 1350 n.20 (source of jury-trial right on equitable defense of arbitrability is 9 U.S.C. § 4). The Court therefore agrees with Defendants that there is

---

[4] Defendants cite *Uszak v. AT&T Mobility Services, LLC*, 658 F. App'x 758, 759 (6th Cir. 2016). *Uszak* recites as part of the case's procedural history that the district court had denied the plaintiff's request for a jury trial as untimely. The Court of Appeals for the Sixth Circuit did not review this ruling.

5

a statutory, not a constitutional, source for the jury right Plaintiff seeks to exercise. (*See* Doc. 33 at 1.)

## B. Procedure to Demand Jury Trial on Existence of Arbitration Agreement

The second question the Court must consider is what a party must do to invoke this jury right. Plaintiff argues a general jury demand in a complaint is sufficient, because a general demand encompasses all issues triable before a jury, *see* Fed. R. Civ. P. 38(c), and because it is timely under 9 U.S.C. § 4. Defendants argue 9 U.S.C. § 4 supplants Rule 38, *see* Fed. R. Civ. P. 81(a)(6)(B), and requires a specific demand for a jury on the making of an arbitration agreement.

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. Rule 81 identifies proceedings to which the Rules do not apply or as to which their application is limited. As to proceedings under the Act, it states as follows: "These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures: . . . 9 U.S.C., relating to arbitration." Fed. R. Civ. P. 81(a)(6)(B). To determine if the Rules apply to demanding a jury trial on the making of an arbitration agreement, the Court must therefore consider whether the Act provides "other procedures" than do the Rules on this subject matter.

The Rules provide that "a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d) [governing filing papers with the district court]." Fed. R. Civ. P. 38(b). A party's jury demand may specify certain issues as the only ones the party wishes to have tried by the jury. Fed. R. Civ. P. 38(c). If a party's demand does not identify specific issues to go to the jury, the party "is considered to have demanded a jury trial on all issues so triable." *Id.* Issues "so triable" include

those on which there is a statutory right to a jury, as well as those on which there is a constitutional right to a jury: "The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). If a jury demand is not "properly served and filed," a jury trial is waived. Fed. R. Civ. P. 38(d). "A proper demand may be withdrawn only if the parties consent." *Id.*

The Act provides as follows regarding a jury demand: "the party alleged to be in default may . . . on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall" provide for a jury trial on the issue. 9 U.S.C. § 4.

The Court concludes that Section Four does not establish "other procedures" for demanding a jury than those in the Rules, except as to the deadline for a demand. Whereas the Rules state that a party "may demand a jury trial *by* (1) serving . . . and (2) filing" a written demand, Fed. R. Civ. P. 38(b) (emphasis added), the Act simply states that a party opposing arbitration "may . . . demand a jury trial of such issue," 9 U.S.C. § 4. The Act contains no "by" clause or its equivalent—no language explaining how a jury demand is to be made. The Act merely states that a jury may be demanded, and when. The Rules thus define *how* a party with an existing jury right may demand a jury, while the Act *creates a right* for one party to do so. Specifically, the Rules establish that a jury demand must be in writing, served on the other parties, and filed with the district court. Fed. R. Civ. P. 38(b). The Act is silent on all of these subjects.[5] 9 U.S.C. § 4. Similarly, the Rules describe what constitutes waiver and withdrawal of a jury demand, Fed. R. Civ. P. 38(d); the Act does not, 9 U.S.C. § 4.

---

[5] Ironically, Defendants complain that "Plaintiff only raised the issue via a request at a scheduling conference with the Court without filing a formal jury demand." (Doc. 33 at 2.) Nothing in the Act requires "filing" or "a formal jury demand." It appears Defendants are relying on the requirements of a written, served, and filed jury demand, as established in Rule 38—the very rule Defendants are arguing does not apply to Plaintiff's jury demand.

7

There is only one point on which the Act provides a procedure other than the Rules: the deadline for making a jury demand. Rule 38 requires a jury demand on an issue "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1). The Act allows a jury demand "on or before the return day of the notice of application." 9 U.S.C. § 4. Rule 81(a)(6)(B) therefore dictates that the jury-demand deadline in the Act governs, rather than the deadline in Rule 38(b)(1).

That the Act sets a deadline other than the one expressed in the Rules does not change the Court's conclusion that the Act does not otherwise provide "other procedures" for demanding a jury. When something must be done is, in most cases, a logically separate question from how it must be done.

Moreover, a deadline to demand a jury trial other than the deadline in Rule 28 is necessary. Proceedings strictly under Section Four include no pleadings, as such, to trigger the deadline in Rule 28. "The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing . . . ." *Moses H. Cone*, 460 U.S. at 22. The first of the "two parallel devices" leading to a "summary hearing" is described in Section Three of the Act: where a civil action is already pending, any of the parties may apply to the court to stay the action so the parties may arbitrate.[6] The second "device" leading to a "summary hearing" is expressly addressed in Section Four:

---

[6]Section Three states as follows:

> ***If any suit or proceeding be brought*** in any of the courts of the United States ***upon any issue referable to arbitration*** under an agreement in writing for such arbitration, ***the court in which such suit is pending***, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement,

8

> ***A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate*** under a written agreement for arbitration ***may petition any United States district court which, save for such agreement, would have jurisdiction under title 28***, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, ***for an order directing that such arbitration proceed*** in the manner provided for in such agreement. . . .

9 U.S.C. § 4 (emphasis added). A party may thus file a petition directly under the Act even where no action is otherwise pending.[7] An application under Section Four is not a pleading that starts a civil action. *See* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); *accord Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 571 (7th Cir. 2007) ("No 'complaint' or 'motion to dismiss' or any other filing conceived by the Federal Rules of Civil Procedure need have been filed" under 9 U.S.C. § 6 in action to vacate arbitration award under 9 U.S.C. § 12.). A jury-demand deadline other than the deadline in Rule 38 is therefore not surprising, and does not otherwise supplant the procedures in Rule 38.

That the Act allows one party, but not the other, to demand a jury trial also does not change the Court's conclusion. As discussed above, there is no constitutional right to a trial by jury on an equitable defense. *Supra* § III(A). Congress granted the right to demand a jury to a party who contends that no arbitration agreement was formed or that he or she did not fail, neglect, or refuse to perform such an agreement. 9 U.S.C. § 4. Congress did not grant this right to the party seeking

---

> providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

[7] The potential free-standing nature of a proceeding under Section Four is especially clear from its penultimate sentence: "If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. Instructing a court to dismiss a pending lawsuit because the parties had ***not*** agreed to arbitrate would be nonsensical. This language must contemplate dismissing a proceeding that was instituted solely to force another party to arbitrate.

to enforce an arbitration agreement. This distinction between parties based on whether they contend an arbitration agreement exists is not a "procedure"; it is the creation of a right in a party who is in a particular position as to the issues.

The Court recognizes that its decision differs from that of the majority of courts that have written on this question. *See, e.g.*, *P.J. Cheese, Inc.*, 861 F.3d 1338. The Court notes that a significant number of those decisions did not engage in a detailed analysis of the question, but merely stated and applied their conclusion. *See, e.g.*, *Chester v. DirecTV, LLC*, 607 F. App'x 362, 365 n.5 (5th Cir. 2015); *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406, 412 n.3 (N.D. Miss. 2016); *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 448 n.5 (M.D.N.C. 2015).

The Court also respectfully disagrees with the analysis of the Court of Appeals for the Eleventh Circuit in *P.J. Cheese*, to the extent it concluded Section Four sets out "other procedures" for demanding a jury than those in Rule 38. *P.J. Cheese* did not engage in a direct comparison of the procedures in Rule 38 and the relevant text of Section Four, which this Court has found decisive above. Rather, it relied on three factors to conclude Section Four sets out "other procedures":

> Section 4 of the FAA unmistakably provides a specific procedure—apart from those in Federal Rule of Civil Procedure 38—for demanding a jury trial on the issue of arbitrability. The statute first sets forth ***who*** is entitled to make a jury demand on an issue related to the "making of the arbitration agreement"—the "party alleged to be in default" in proceeding under the agreement. 9 U.S.C. § 4. It then sets forth ***when*** the specific party must make its demand—"on or before the return day of the notice of application" to submit to arbitration. *Id.* Then, finally, it sets forth ***how*** a party must make its demand—with a specific "demand [for] a jury trial of ***such*** issue." *Id.* (emphasis added).

*P.J. Cheese*, 861 F.3d at 1349 (footnotes omitted; emphases in original).

The first factor—that Section Four states ***who*** may make a demand—is more logically explained by the fact that Section Four is creating a brand-new jury-trial right in one party than by

the conclusion that Section Four is setting up procedures other than those in Rule 38. While *P.J. Cheese* elsewhere discussed the fact that the source of the jury right is the statute itself, it did not discuss how that fact impacts the degree to which Section Four should be seen as setting up "other procedures" than those in Rule 38.[8]

The second factor—***when*** the demand may be made—does not support a conclusion that Section Four is setting up procedures other than Rule 38, except as to the deadline itself, for the reasons the Court has discussed above.

And the Court disagrees with the factual premise of the third factor—that Section Four sets out ***"how"*** a party must make a demand. As the Court has discussed above, Section Four is silent as to the "how" of the demand, aside from its timing. The court in *P.J. Cheese* finds the "how" by saying the demand must be "specific." 861 F.3d at 1349 (the statute "sets forth *how* a party must make its demand—with a specific 'demand] for a jury trial on *such* issue") (quoting 9 U.S.C. § 4) (emphasis in original). Section Four nowhere says the demand must be "specific." *See* 9 U.S.C. § 4. *P.J. Cheese* concludes the demand must be "specific" only because Section Four uses the word "such" in describing the issue on which a party may demand a jury. *Id.* The Court respectfully disagrees that the word "such" in this context can carry so much weight. Section Four uses the phrase "such issue" or "such an issue" three times in two consecutive sentences, each time referring back to the way it has defined the issue to be decided: "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4. Section Four uses the adjective "such" in this context to avoid having to repeat the previous, rather long, identification of the "issue." It does not contain any requirement that the party in default must

---

[8] In fact, the *P.J. Cheese* analysis at one point hearkens back to the jury-trial procedures in Rule 38: the case *P.J. Cheese* cites for the proposition that a party waives its right to a jury unless it makes a timely demand itself relies on Rule 38. *P.J. Cheese*, 861 F.3d at 1348 (citing *LaMarca v. Turner*, 995 F.2d 1526, 1545 (11th Cir. 1993) (citing Fed. R. Civ. P. 38(d))).

affirmatively reference the "issue," nor any other requirement about the content of the demand. In the absence of any actual procedures a party must follow to make a jury demand, the Court abides by its conclusion that the relevant language of Section Four is creating a jury right, not setting out procedures for a jury demand that supplant the procedures in Rule 38.

The Court also notes that the decision Defendants cite from this Court, *MetLife Sec., Inc. v. Holt*, 215 F. Supp. 3d 599 (E.D. Tenn. 2016) (Jordan, J.), has a holding that is not contrary to the Court's conclusion here. In *MetLife*, a retirement account holder filed suit in state court against the individual account representative and the securities company. *Id.* at 600–01. The securities company later filed a petition in federal court seeking to force the account holder to arbitration. *Id.* at 602. This was the first filing in federal court, and the proceeding was thus strictly a proceeding under Section Four of the Act. The account holder moved to dismiss or for summary judgment, but did not demand a jury until four months after this "response" to the petition to arbitrate had been filed. *Id.* at 602–03. The Court in *MetLife* held the jury demand was untimely under the deadline set by the Act, rejecting the account holder's attempt to construe later filings as "pleadings" under Rule 38 that restarted her clock to demand a jury. *Id.* at 605–06. This holding is consistent with the Court's current conclusion, that the Act sets a different deadline for the jury demand than does Rule 38.[9]

### C. Whether Plaintiff Properly Demanded a Jury on Arbitration Agreement

The third and final question the Court must address is whether Plaintiff properly invoked his statutory right to a jury trial on the making of the arbitration agreement. The Court concludes

---

[9] *MetLife*'s conclusion that the jury demand was untimely is also factually inapplicable here; there was no pre-existing federal complaint to consider at all in *MetLife*, let alone one with a general jury demand. To the extent *MetLife* discusses procedural issues other than the deadline for the demand, the Court notes that these discussions are not essential to *MetLife*'s holding and respectfully disagrees to the extent they differ from the Court's analysis here.

12

he did.  First, he is a party to whom the statutory right to demand a jury trial was given, in that he is "alleged to be in default" under an agreement to arbitrate.  *See* 9 U.S.C. § 4.  Second, he satisfied the procedural requirements of Rule 38 by making his jury demand in writing, serving it on Defendants, and filing it with the Court.  (Docs. 1, 8.)  Third, his jury demand encompassed the making of the arbitration agreement: the demand was on "all issues . . . triable" by a jury, and this includes issues triable by a jury pursuant to statutes such as 9 U.S.C. § 4.[10]  *See* Fed. R. Civ. P. 38(a), (c).  Fourth, he made his demand before the deadline in Section Four: he demanded a jury on April 20, 2017 (Doc. 1) and again on July 18, 2017 (Doc. 8), both of which were before his timely October 5, 2017 response (Doc. 22) to Defendants' motion to dismiss.

## IV.  CONCLUSION

The Court concludes that Plaintiff is entitled to a jury trial on the issue of whether an agreement to arbitrate exists between Plaintiff and Defendants.

**An appropriate Order will enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

---

[10] As discussed above, the Court finds no requirement of further "specificity" in the demand.  Merely for the sake of completeness, to the extent further specificity could possibly be required as to whether Plaintiff demanded a jury on the issue of the making of the arbitration agreement, the Court notes that Plaintiff's complaint and amended complaint both included express factual allegations that he had opted out of the arbitration agreement.  (Doc. 1 ¶ 75; Doc. 8 ¶ 75.)

13