UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOMMY D. GARREN, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:17-CV-149 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| CVS RX SERVICES, INC., | ) | Magistrate Judge Poplin |
| | ) | |
| *Defendant*. | ) | |

**M E M O R A N D U M**

Before the Court are thirteen consolidated motions in limine filed by Plaintiff, Tommy D.

Garren (Doc. 103), and ten individual motions in limine filed by Defendant, CVS Rx Services,

Inc. (Docs. 104–13).  Each party has responded to the other's motions.  (Docs. 114, 115.)  Neither

party has replied, and the time to do so has expired.  *See* E.D. Tenn. L.R. 7.1(a)(3).

I.    **BACKGROUND**

Plaintiff was employed by Defendant as a staff pharmacist at Defendant's store in Tellico

Plains, Tennessee ("Tellico").  Plaintiff was approximately sixty-two years old at the times

relevant to this action.  The other staff pharmacist at the Tellico store, Bryan Wooldridge, was

approximately fifty-three years old.  Wooldridge was the Tellico pharmacy manager and Plaintiff's

direct supervisor for part of Plaintiff's employment.

In July 2015, a district manager for Defendant told Plaintiff he would be made a floater

pharmacist, meaning he would work shifts in different stores as needed.  Defendant asserts Plaintiff

consented to the transfer, while Plaintiff asserts he only acquiesced in it.  Plaintiff worked as a

floater pharmacist for six weeks in August and September 2015.  During this time, Defendant

placed a new pharmacy graduate, who was twenty-seven years old, in Plaintiff's previous position

at the Tellico store.  On August 5, 2015, Plaintiff complained to a regional manager of age discrimination against him.  Defendant transferred Plaintiff back to his position as a staff pharmacist in Tellico in September 2015, at Plaintiff's request.

Approximately a week after Plaintiff's return to the Tellico store, Defendant began an investigation of Plaintiff, including a morale survey of Plaintiff's impact at the store.  The morale survey was requested by the front-store manager, Shawn Plemons, who made an email complaint about things Plaintiff had allegedly said about her to others since his return from the floater position.  The investigation also considered whether Plaintiff was making certain phone calls to customers and prescribers regarding prescription refills.  On October 19, 2015, Defendant suspended Plaintiff pending an investigation.  When Plaintiff returned to work on October 27, 2015, Defendant gave him a Level III final warning and an Improvement Action Plan.  Plaintiff made several additional complaints about age discrimination during the suspension and after receiving the warning.

On November 6, 2015, Defendant terminated Plaintiff, asserting as grounds that he had improperly called into a telephone survey line about the store using two customer receipts.

On April 20, 2017, Plaintiff filed suit against Defendant,[1] asserting causes of action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, (the "ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, (the "ADA").  (Doc. 1 ¶¶ 76–112.)  On August 28, 2020, the Court granted in part Defendant's motion for summary judgment, dismissing Plaintiff's claim for harassment under the ADEA and all his claims under

---

[1] The initial complaint named two other entities and CVS Health Corporation, Inc.  (Doc. 1).  The amended complaint substituted Defendant, CVS Rx Services, Inc., for CVS Health Corporation, Inc.  (Doc. 8.)  The two other entities have been dismissed.  (*See* Doc. 120.)

the ADA. (Doc. 120.) Plaintiff's remaining causes of action are for discrimination and retaliation in violation of the ADEA. (*See id.*)

The case is set for trial on September 13, 2021. (Doc. 129.)

## II.    <u>ANALYSIS</u>

Plaintiff has filed thirteen consolidated motions in limine (Doc. 103), and Defendant has filed ten (Docs. 104–13).

### A.    **Plaintiff's Motions in Limine**

Plaintiff has filed thirteen consolidated motions in limine. (Doc. 103.) Several of Plaintiff's motions relate to procedural, rather than evidentiary, issues. Defendant does not object to nine of Plaintiff's motions on the condition that the Court's rulings would apply equally to both parties. (Doc. 115 at 1–2.) Defendant does not object to three other of Plaintiff's motions, but on more extensive conditions. (*Id.*) Defendant objects to one of Plaintiff's motions, the thirteenth, in its entirety. (*Id.*)

#### 1.    **Plaintiff's First Motion: Dismissed Claims**

Plaintiff's first motion asks the Court to exclude any reference to claims he has voluntarily dismissed or which the Court has dismissed. (Doc. 103 at 1–2.) Plaintiff cites Rules 402 and 403 of the Federal Rules of Evidence in support. (*Id.* at 2.) Defendant does not object to the motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.)

Rule 402 states that "[i]rrelevant evidence is not admissible." The rules define evidence as "relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Court has dismissed three sets of claims: Plaintiff's disability claims under the ADA, his harassment claims under the ADEA, and his claims against two other entities. (Doc. 120.) The

3

dismissal of these claims does not tend to make more or less probable any facts of consequence in determining the remaining claims. Therefore, evidence regarding the dismissal of any of Plaintiff's claims is irrelevant under Rule 401 and inadmissible under Rule 402. Plaintiff's consolidated motions in limine (Doc. 103) will be **GRANTED IN PART** as to Plaintiff's first motion in limine. Defendant shall not introduce evidence regarding, refer to, or make any argument regarding Plaintiff's dismissed claims.

### 2. Plaintiff's Second Motion: Settlement Discussions and Mediation

Plaintiff's second motion seeks to exclude any reference to settlement discussions or mediation regarding the parties' dispute pursuant to Rule 408 of the Federal Rules of Evidence. (Doc. 103 at 2.) Defendant does not object to Plaintiff's motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.)

Rule 408 prohibits the use of settlement communications "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," with certain exceptions not relevant here. Fed. R. Evid. 408.

There does not appear to be a current dispute about the admissibility of any potential evidence under Rule 408. Plaintiff does not identify any disputed evidence for the Court to evaluate, nor does he say he has reason to believe Defendant will attempt to admit any evidence that is inadmissible under Rule 408. (*See* Doc. 103 at 2.) Defendant agrees that the parties should not introduce evidence of settlement communications. (Doc. 115 at 1.) Plaintiff thus appears to be asking the Court for an advisory order on the Court's intention to apply a rule of evidence as written. Such an order is unnecessary. Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's second motion in limine.

4

### 3. Plaintiff's Third Motion: Leading Questions on Direct Examination

Plaintiff's third motion asks the Court to allow him to conduct direct examinations of present or former management employees of Defendant by leading questions. (Doc. 103 at 2–3.) Plaintiff particularly identifies "Randall Hatfield, Jeff Broyles, Stephen Burd, Shawn Plemmons, Mary Ellen Gibson, Linda Mitchell, David Sanford, Melissa Bellew, Melissa Dotson, Katrina Standridge, Suzan Schrader, Angela (Lane) Householder, Robert (Bryan) Wooldridge, and Geoffe Dupes," as well as all witnesses as to whom Defendants' initial disclosures gave an address of in care of Defendant's counsel. (*Id.*) Plaintiff relies on Rule 611 of the Federal Rules of Evidence, arguing these witnesses are management employees or decision-makers regarding Plaintiff's employment and therefore identified with Defendant. (*Id.* at 3.) Defendant does not object to Plaintiff's motion but "preserve[s] [its] right under [Rule 611(c)] to ask leading questions on cross-examination of these witnesses." (Doc. 115 at 2.)

While leading questions are generally not allowed on direct examination, a court should ordinarily "allow leading questions . . . when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Defendant does not appear to dispute that the referenced witnesses are identified with Defendant for purposes of Rule 611(c)(2). Accordingly, Plaintiff's consolidated motions in limine (Doc. 103) will be **GRANTED IN PART** as to Plaintiff's third motion in limine. Plaintiff may ask leading questions on direct examination of the witnesses  identified in Plaintiff's motion (Doc. 103 at 2–3).

### 4. Plaintiff's Fourth Motion:  Leading Questions for Affirmative Defenses

Plaintiff's fourth motion asks the Court to prevent Defendant from asking leading questions when cross-examining "non-hostile witnesses" on matters that go beyond the scope of their direct examinations and seek instead to establish one of Defendant's affirmative defenses. (Doc. 103 at

3–4.) Plaintiff relies on Rule 611(c) of the Federal Rules of Evidence. (*Id.* at 3.) Defendant does not address Plaintiff's fourth motion specifically. However, in response to Plaintiff's third motion, Defendant seeks to "preserve [its] right under [Rule 611(c)] to ask leading questions on cross-examination of" witnesses identified in Plaintiff's third motion. (Doc. 115 at 2.)

Leading questions are ordinarily allowed on cross-examination. Fed. R. Evid. 611(c)(1). "Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b). However, during cross-examination, a court may allow inquiry into matters beyond the scope of the direct examination "as if on direct examination"—in other words, without the use of leading questions. *See* Fed. R. Evid. 611(b, c).

The Court does not have enough information to resolve any dispute there may be as to Plaintiff's fourth motion. First, there is no legal dispute: Plaintiff relies on Rule 611, and Defendant merely preserves its rights under the same Rule. If the parties disagree on what Rule 611 means as a matter of law, they have not given the Court enough information to recognize their dispute. Second, a ruling on the application of Rule 611 in a given examination would be premature, because Plaintiff's fourth motion sets out only a general scenario: Defendant asking non-hostile witnesses about matters beyond the scope of their direct examinations but relevant instead to Defendant's affirmative defenses. It would require the context of the examinations themselves for the Court to determine whether a certain line of questioning by Defendant is, in fact, beyond the scope of direct and relevant instead to an affirmative defense. Plaintiff thus appears to be asking the Court for an advisory order on the Court's intention to apply a rule of evidence as written. Such an order is unnecessary. Accordingly, Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's fourth motion in limine.

### 5. Plaintiff's Fifth Motion: Number of Documents Produced or Witnesses Deposed

Plaintiff's fifth motion asks the Court to exclude any reference by parties or witnesses to the number of documents produced in discovery or the number of witnesses who were deposed. (Doc. 103 at 4.) Plaintiff does not cite any authority in support of his motion. (*See id.*) Defendant does not object to Plaintiff's motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.) Lacking any proffered legal basis, Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART** as to Plaintiff's fifth motion in limine.

### 6. Plaintiff's Sixth Motion: Matters Not Pleaded or Preserved

Plaintiff's sixth motion seeks to exclude any evidence or argument regarding defenses Defendant did not plead in its answer or preserve in the final pretrial order, which is yet to be entered. (Doc. 103 at 5.) Plaintiff does not cite any authority in support of his motion, but he argues any new defenses by Defendant would prejudice Plaintiff unduly. (*Id.*) Defendant does not object to Plaintiff's motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.)

There does not appear to be a current dispute between the parties about the appropriateness of evidence or argument regarding defenses Defendant did not plead or will not have preserved by the time of trial. Plaintiff does not identify any disputed evidence for the Court to evaluate, nor does he say he has reason to believe Defendant will attempt to admit any such evidence or make any such argument. (*See* Doc. 103 at 5.) Defendant, for its part, agrees that the parties should not introduce evidence of matters that that were not pleaded or preserved. (Doc. 115 at 1.) Plaintiff thus appears to be asking the Court for an advisory order on the admissibility of matters that were not pleaded or preserved. Such an order is unnecessary. Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's sixth motion in limine.

### 7. Plaintiff's Seventh Motion: Evidence Not Timely Produced

Plaintiff's seventh motion seeks to exclude any evidence or witness which fell within the scope of a proper discovery request but which was not timely produced or identified. (Doc. 103 at 5.) Plaintiff does not cite any authority in support of his motion and does not identify any evidence, category of evidence, or witnesses as falling within the reach of his motion. (*Id.*)

Defendant responds that it disclosed all witnesses and evidence on time. (Doc. 115 at 2.) Defendant specifically opposes Plaintiff's motion to the extent Plaintiff may intend to object to Defendant's intention to call Travis Houweling, an employee of Defendant's third-party vender, Toluna CEM, as a records custodian at trial. (*Id.* at 2–3.)

Plaintiff does not identify any evidence or witnesses for the Court to exclude based on untimely production or disclosure. (*See* Doc. 103 at 5.) To the extent Plaintiff would seek to exclude Houweling, the motion must fail. On September 17, 2020, Magistrate Judge Debra Poplin allowed Defendant to amend its witness list, over Plaintiff's objection, to name Houweling as a representative of Toluna CEM. (Doc. 123.) Any dispute as to whether Defendant may call Houweling as a witness based on the timeliness of Defendant's disclosures has been resolved, and Plaintiff has not identified any other ground for exclusion. Plaintiff's consolidated motions in limine (Doc. 103) will therefore be **DENIED IN PART AS MOOT** as to Plaintiff's seventh motion in limine.

### 8. Plaintiff's Eighth Motion: Documents or Witnesses Not Included in Rule 26 Disclosures

Plaintiff's eighth motion seeks to exclude any documents or witnesses Defendant did not disclose under Rule 26 of the Federal Rules of Civil Procedure before the close of discovery. (Doc. 103 at 5–6.) Plaintiff argues Rule 26(a)(1)(A)(i) requires disclosure of the name, address, and telephone number of individuals with discoverable information a party may use in its support, and

8

that merely mentioning the name of a potential witness during a deposition is not sufficient. (*Id.* at 6.) Plaintiff argues Rule 26(a)(1)(A)(ii) sets out similar requirements for documents in a party's possession, custody, or control. (*Id.*) Plaintiff, however, does not identify any witnesses or documents he contends were not properly disclosed or were mentioned only in depositions. (*See id.* at 5–6.)

Defendant responds to Plaintiff's eighth motion as it did to Plaintiff's seventh motion: it claims it disclosed all witnesses and evidence on time, and it says it should be allowed to call Houweling at trial as a document custodian. (Doc. 115 at 2–3.)

For the same reasons discussed as to Plaintiff's seventh motion in limine (*supra* § II(A)(7)), Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's eighth motion in limine.

### 9. Plaintiff's Ninth Motion: Sequestering Witnesses

Plaintiff invokes the witness-sequestration rule in Rule 615 of the Federal Rules of Evidence in his ninth motion in limine. (Doc. 103 at 6–9.) Defendant does not object to Plaintiff's invocation of Rule 615 on the condition that it would apply equally to both parties. (Doc. 115 at 1.)

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. Exclusion does not apply to:

(a)     a party who is a natural person;
(b)     an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
(c)     a person whose presence a party shows to be essential to presenting the party's claim or defense; or
(d)     a person authorized by statute to be present.

*Id.*

Plaintiff's consolidated motions in limine (Doc. 103) will be **GRANTED IN PART** as to Plaintiff's ninth motion in limine. The Court will apply Rule 615 at the trial.

### 10. Plaintiff's Tenth Motion: Opening the Door

Plaintiff's tenth motion is also procedural. Plaintiff asks for an order that, if a party believes the other party has opened the door to otherwise inadmissible evidence, the party seeking to introduce the otherwise inadmissible evidence will raise the matter with the Court outside the presence of the jury. (Doc. 103 at 9–10.) Defendant does not object to Plaintiff's motion on the condition that it would apply equally to both parties. (Doc. 115 at 1.)

"To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). It is also the Court's responsibility to "decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).

Plaintiff's consolidated motions in limine (Doc. 103) will be **GRANTED IN PART** as to Plaintiff's tenth motion in limine. If a party believes the other party has opened the door to otherwise inadmissible evidence, the party seeking to introduce the evidence must raise the matter with the Court outside the hearing of the jury before suggesting the evidence to the jury by any means. (*See* Fed. R. Evid. 103(d).) The parties are further directed to paragraph 23 of the undersigned's judicial preferences, which addresses sidebar conferences. *Available at* https://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge.

### 11. Plaintiff's Eleventh Motion: After-Acquired Evidence

Plaintiff's eleventh motion seeks to exclude any evidence of Plaintiff's wrongdoing which Defendant did not acquire until after it terminated Plaintiff. (Doc. 103 at 10–12.) Plaintiff argues such evidence is irrelevant and inadmissible before the jury because it is relevant only to fashioning

10

a remedy. (*Id.* at 11 (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995)).) Defendant does not object to Plaintiff's motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.)

There does not appear to be a current dispute between the parties about the introduction of after-acquired evidence to the jury. Plaintiff does not identify any disputed evidence for the Court to evaluate, nor does he say he has reason to believe Defendant will attempt to admit any such evidence or make any such argument. (*See* Doc. 103 at 10–12.) Defendant, for its part, agrees that the parties should not introduce after-acquired evidence to the jury. (Doc. 115 at 1.) Plaintiff thus appears to be asking the Court for an advisory order on the admissibility of after-acquired evidence. Such an order is unnecessary. Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's eleventh motion in limine.

### 12. Plaintiff's Twelfth Motion: Evidence Unknown to Decisionmakers

Plaintiff's twelfth motion seeks to exclude any evidence not known to decisionmakers at the time they made "the decision" that is at issue in this lawsuit. (Doc. 103 at 12.) It is unclear whether Plaintiff refers to the transfer decision, the termination decision, or both. Plaintiff does not cite authority in support of his motion. (*See id.*) Defendant does not object to Plaintiff's motion on the condition that the Court's ruling would apply equally to both parties. (Doc. 115 at 1.)

Plaintiff's twelfth motion appears substantially the same as his eleventh motion.[2] Therefore, for the same reasons discussed as to Plaintiff's eleventh motion (*supra* § II(A)(11)),

---

[2] Plaintiff's twelfth motion could be broader than the eleventh, in that it seeks to exclude not just evidence of other alleged wrongdoing by Plaintiff, but also all evidence unknown to Defendant's decisionmakers. Taken literally, this motion could apply to categories of evidence Plaintiff is unlikely to want to exclude, such as evidence to prove Plaintiff's damages. The Court rejects this broader reading as leading to illogical results Plaintiff is unlikely to have intended.

11

Plaintiff's consolidated motions in limine (Doc. 103) will be **DENIED IN PART AS MOOT** as to Plaintiff's twelfth motion in limine.

### 13. Plaintiff's Thirteenth Motion: Plaintiff's Assets and Income

Plaintiff's thirteenth motion seeks to exclude any reference to Plaintiff's assets, investments, income, or losses, except as may be relevant to calculating backpay. (Doc. 103 at 12–13.) Plaintiff specifically identifies "Plaintiff's ownership of land, his home, stocks and other securities, his family's farm, the Garren Stables business, and Plaintiff's horses." (*Id.* at 12.) Relying on Rules 105, 401, 402, and 403 of the Federal Rules of Evidence, Plaintiff argues this information is irrelevant and confidential and risks causing undue prejudice to Plaintiff, confusing or misleading the jury, and wasting time. (*Id.* at 12–13.)

Defendant opposes the motion, arguing the evidence is relevant in two ways. (Doc. 115 at 3–4.) First, Defendant argues evidence about Garren Stables, Plaintiff's farm, and Plaintiff's horses is relevant to Plaintiff's disability claims because of the associated manual labor. (*Id.*) However, the Court has dismissed Plaintiff's disability claims (Doc. 120), so whether Plaintiff was disabled is no longer of consequence in determining this action. Therefore, evidence that is only useful for proving whether Plaintiff was disabled is no longer relevant in this action. *See* Fed. R. Evid. 401.

Second, Defendant argues the evidence is relevant to Plaintiff's mitigation of damages. (Doc. 115 at 4.) Defendant alleges Plaintiff was unemployed for thirteen months after his termination and applied for only five positions during this time. (*Id.* (citing Doc. 115-2 at 15–16 [Pl.'s Answer to Def.'s 2d Interrogs. No. 12]).) Defendant accordingly argues "the time and effort Plaintiff expended in relation to his horses and farm along with his other assets and investments is pertinent to his *efforts and desire* to find subsequent employment." (*Id.* (emphasis added).)

12

Defendant is correct that an ADEA plaintiff generally has "a duty to mitigate his damages by seeking new employment," and a damages award may be reduced to the extent the employer shows the employee failed to do so. *See Skalka v. Fernald Env't Restoration Mgmt. Corp.*, 178 F.3d 414, 426 (6th Cir. 1999). But Defendant cites no authority for the proposition that a plaintiff's motivation to mitigate damages is relevant, as opposed to his actual actions to mitigate damages. The Court concludes it is Plaintiff's actions or lack of actions that are relevant to mitigation of damages. Plaintiff's subjective motivation to mitigate, the other activities on which he may have spent his time, and the assets off of which he might have been living are not of consequence in determining this action and therefore not relevant. *See* Fed. R. Evid. 401.

Plaintiff's consolidated motions in limine (Doc. 103) are **GRANTED IN PART** as to Plaintiff's thirteenth motion in limine. Defendant shall not introduce evidence or make arguments or references to Plaintiff's assets, investments, income, or losses, including without limitation his real property, his investments, his family's farm, the Garren Stables business, or his horses.

### B.     Defendant's Motions in Limine

Defendant has filed ten motions in limine (Docs. 104–13), each of which Plaintiff opposes, in whole or in part (Doc. 114).

### 1.     Defendant's First Motion: News and Internet Articles

Defendant moves to exclude evidence, argument, and references to news or internet articles regarding the opioid epidemic, opioid litigation, or the compensation of Defendant's executives. (Doc. 104.) Defendant points to seven articles identified in Plaintiff's Amended Exhibit List (Doc. 104-1), specifically Plaintiff's Proposed Exhibits 17, 70–74, and 81. (Doc. 104 at 3.) Defendant argues the articles are inadmissible hearsay or double hearsay under Rule 802. (*Id.* at 4–5.) In the

alternative, Defendant argues the articles are irrelevant under Rule 401 and would lead to unfair prejudice, confusion of the issues, and misleading the jury under Rule 403. (*Id.* at 5–7.)

Plaintiff responds that the articles are not hearsay because he will not offer them for the truth of the matters asserted, but rather to prove "what decision-makers believed and their intent and motives concerning the challenged employment actions." (Doc. 114 at 7–8.) Plaintiff argues the articles about the opioid epidemic and opioid litigation are relevant, as they support his theory that Defendant preferred younger pharmacists because it presumed younger pharmacists would be more likely to fill "pill mill" opioid prescriptions without asking questions. (*Id.* at 8.) Plaintiff does not address the relevance of the article regarding the compensation of one of Defendant's executives. Finally, Plaintiff disagrees with Defendant's alternative argument that Rule 403 warrants exclusion, saying a limiting instruction could correct any unfair prejudice. (*Id.*)

Hearsay is generally not admissible. Fed. R. Evid. 802. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A "statement" is "a person's . . . written assertion." Fed. R. Evid. 801(a). Hearsay within hearsay, also known as double hearsay, "is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805; *see also United States v. Demjanjuk*, 367 F.3d 623, 631 (6th Cir. 2004). An exception to the inadmissibility of hearsay exists for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . , but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3).

The articles Defendant identifies are hearsay. First, they are statements, in that they are written assertions made by various authors. *See* Fed. R. Evid. 801(a). Some of the articles also

14

repeat statements of persons other than the authors of the articles, implicating the double-hearsay rule. (*See, e.g.*, Doc. 104-2 at 3–5 (*Vox* article repeats statements of spokespersons for Defendant and other pharmacies, reporting by other media outlets, and statistics published by government agencies).) Second, the articles are not statements that are being made or will be made at trial. *See* Fed. R. Evid. 801(c)(1). Third, Plaintiff would be offering the articles to prove the truth of the matters asserted in the articles, notwithstanding Plaintiff's argument to the contrary. *See* Fed. R. Evid. 801(c)(2).

Plaintiff argues he would offer the statements not for their truth, but to show the intent, motives, and beliefs of the individuals who made decisions about his employment. (Doc. 114 at 8.) But Plaintiff's state-of-mind argument addresses only the purported statements by representatives of Defendant, ignoring the hearsay nature of the articles themselves. For hearsay within hearsay to be admissible, each part of the combined statements must be admissible, not just one part. *See* Fed. R. Evid. 805. Plaintiff offers no argument or hearsay exception directed to the articles themselves. In other words, even if the statements attributed to the decisionmakers could show something relevant about the decisionmakers' states of mind regardless of their truth, the decisionmakers' statements could only be useful for the jury if it were assumed that the articles themselves are truthful assertions about what the decisionmakers said. Such an assumption would run afoul of the rule against hearsay.

The articles are hearsay, and Defendant's first motion in limine (Doc. 104) will therefore be **GRANTED**. Plaintiff shall not introduce evidence or make arguments or references to the news or internet articles designated as Plaintiff's Proposed Exhibits 17, 70–74, and 81.

15

### 2. Defendant's Second Motion: Information About Parties and Counsel

Defendant moves to exclude evidence, argument, and references "to the size or wealth of . . . Defendant[], Plaintiff's wealth or lack thereof, the fact that . . . Defendant is [not] headquartered in Tennessee, the fact that Defendant['s] counsel from Littler Mendelson, P.C. ('Littler') are from outside of Chattanooga, Littler's specialty, or the size and locations of Littler's offices."  (Doc. 105 at 1.)  Defendant argues these matters are irrelevant under Rule 401 and excludable under Rule 403.  (*Id.*)

Plaintiff responds that evidence regarding Defendant's "financial condition, size, sales and . . . [net] worth is relevant" to Plaintiff's claim for punitive damages.  (Doc. 114 at 8.)  Plaintiff does not oppose the remainder of Defendant's second motion in limine.  (*Id.* at 10 n.1.)

Evidence of a party's financial condition is generally not relevant.  *United States v. Zipkin*, 729 F.2d 384, 390–91 (6th Cir. 1984).  It generally is relevant, however, to the amount of an award of punitive damages.  *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 649 (6th Cir. 2005).

Plaintiff has made a claim for punitive damages.  (Doc. 8 [Am. Compl.] at 3, 19.)  Defendant's motion, however, does not address that claim.  (*See* Doc. 105 at 3–4.)  Instead, Defendant bases its argument on the inadmissibility of "David and Goliath" evidence, or evidence meant to prejudice the jury against Defendant and for Plaintiff based on their relative size and resources.  (*Id.*)  Most of the cases Defendant cites similarly fail to address the effect of a punitive-damages claim on the admissibility of financial-condition evidence.  (*See id.* and cases cited therein.)  In the one cited case which discusses the interaction of financial-condition evidence and a punitive-damages claim, the court excluded financial evidence at the liability phase of the trial, but noted "such evidence would be admissible if the case proceeds to a punitive damages phase," in a case in which state law required the two phases be separate.  *Green v. Logan's*

16

*Roadhouse, Inc.*, No. 2:13-CV-238-KS-MTP, 2015 WL 200977, at *2 (S.D. Miss. Jan. 14, 2015). Here, there has been no motion to separate the jury's consideration of liability from its consideration of punitive damages.

Given Plaintiff's pending claim for punitive damages, evidence of Defendant's financial condition is not irrelevant, nor is its relevance substantially outweighed by the risk of unfair prejudice to Defendant. Defendant's second motion in limine (Doc. 105) will therefore be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall not introduce evidence or make arguments or references to Plaintiff's financial condition, the location of Defendant's headquarters, or Defendant's counsel's locations, size, or specialty.

### 3. Defendant's Third Motion: Other Suits or Verdicts

Defendant moves to exclude evidence, argument, and references to other lawsuits or verdicts against Defendant, or any related entity, involving claims of age- or disability-based discrimination or its arbitration program.[3] (Doc. 106.) Defendant points out that Plaintiff included in his Amended Witness List the jury interrogatories or verdict form from two lawsuits decided against CVS in the Northern District of Alabama, *Roger Harris v. CVS*, No. 1:11-CV-732-VEH, and *James King v. CVS*, No. 1:12-CV-1715-VEH, along with a negative decision by the National Labor Relations Board (the "NLRB") regarding Defendant's arbitration program (the "NLRB Decision"). (*Id.* at 5 (citing Doc. 106-1 [Pl.'s Am. Ex. List] at 5 (listing Pl.'s Am. Compl. as Pl.'s Ex. 68) and Doc. 8-1 [Am. Compl.] at 19–36.) Defendant argues other lawsuits and verdicts are

---

[3] Defendant's third motion also asks to exclude mention of any lawsuits regarding the opioid epidemic. (Doc. 106 at 4, 6.) However, the motion does not specifically identify any such lawsuits. In addition, the legal authority on which Defendant's third motion relies and the bulk of its argument concern the admissibility of information about employment lawsuits. Defendant's seventh motion, however, addresses the admissibility of evidence about the opioid epidemic and the filling of opioid prescriptions by Defendant. Therefore, the Court will defer consideration of opioid-epidemic matters to Section III(B)(7).

irrelevant under Rule 401 and excludable under Rule 403. (*Id.* at 1.) Defendant also argues such matters are inadmissible both as character evidence under Rule 404(b) and as hearsay under Rule 802. (*Id.*)

The Court will first consider the admissibility of the NLRB Decision and will then turn to the admissibility of information regarding other employment lawsuits.

### a. The NLRB Decision

Defendant argues the NLRB Decision is irrelevant because the arbitration dispute in this case has already been decided. (Doc. 106 at 5.) Plaintiff's response does not address the relevance of the NLRB decision. (*See* Doc. 114 at 10–12.)

As Defendant states, the parties' dispute over arbitration in this case has already been decided and will not be before the jury. (Doc. 106 at 5; *see also* Doc. 55 [Verdict Form].) A decision by the NLRB regarding Defendant's arbitration program therefore does not tend to make any fact of consequence to the current action more or less probable than it would be without it. *See* Fed. R. Evid. 401. The NLRB decision is irrelevant and not admissible in this action.

### b. Other Employment Lawsuits or Verdicts

Defendant argues the existence of other lawsuits against CVS "does not make any fact more or less probable in this case and has no bearing on a fact of consequence to this action's determination." (Doc. 106 at 3.) As to the *King* and *Harris* lawsuits specifically, Defendant notes they were filed in 2011 and 2012, three or four years before Plaintiff's 2015 termination; they arose out of employment in a different state and with different supervisors than Plaintiff's; and the amount of the verdict in the *King* matter is irrelevant in any case. (*Id.* at 5.)

Plaintiff responds that the verdicts are admissible under Rule 404(b)(1) to prove Defendant's motive, intent, plan, and knowledge under Rule 404(b)(1). (Doc. 114 at 10–11.) He

argues the verdicts are also relevant to Plaintiff's claims for punitive damages and willful violation of the ADEA, as well as to Defendant's good-faith affirmative defenses and Defendant's discriminatory attitude in general. (*Id.* at 11.) He argues that the prejudice to Defendant in admitting the verdicts is not undue under Rule 403 and can be mitigated by a limiting instruction. (*Id.* at 10–11.) Finally, he argues jury verdicts are adjudicative facts of which the Court may take judicial notice under Rule 201, and that Defendant is collaterally estopped from denying that Defendant terminated the plaintiffs in the *Harris* and *King* cases because of age discrimination. (*Id.* at 10–12.)

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

A Rule 404(b) inquiry has three parts: (1) "a preliminary determination as to whether sufficient evidence exists that the prior act occurred"; (2) "a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b)"; and (3) a determination of "whether the 'other acts' evidence is more prejudicial than probative under Rule 403." *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). With regard to the second requirement, past acts must be "substantially similar and reasonably near in time to" the matters at issue in the current trial. *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985); *see also McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (articulating four-step test, including that "the other act must be similar enough and close enough in time to be relevant to the matter at issue").

19

In *McLeod*, the Court of Appeals for the Sixth Circuit affirmed the exclusion from an ADEA lawsuit of evidence regarding other employment discrimination lawsuits filed against the defendant-employer. *McLeod*, 73 F. App'x at 854. The court held that "there was no clear nexus between" the other lawsuits and the case on appeal because "[t]he employees who filed these actions worked at several different offices, and were discharged for a variety of reasons." *Id.* The court also noted that "the potential for prejudice that would have accompanied th[e] evidence would have substantially outweighed its probative value, and this evidence would have misled the jury." *Id.*

Defendant relies on *McLeod* and asserts that the *Harris* and *King* lawsuits concern events in different states than Plaintiff's employment, address decisions made by different supervisors than those Plaintiff had, and involve events that took place three or four years or more before Plaintiff's transfer and termination. (Doc. 106 at 3–4.) Plaintiff does not dispute these assertions, nor does he explain how *Harris* and *King* are "similar enough and close enough in time to be relevant to" his case. *See McLeod*, 73 F. App'x at 854. Plaintiff does not, in fact, discuss *McLeod* at all. The cases Plaintiff does cite in which prior verdicts or acts were admissible come from other circuits and do not involve employment discrimination lawsuits. *See United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004) (trial court erred in excluding state-court judgment showing defendant's company still owned assets the government claimed defendant had given away); *United States v. Cardinas Garcia*, 596 F.3d 788, 797 (10th Cir. 2010) (testimony regarding previous drug sales by defendant held admissible to prove defendant's intent to distribute other drugs in his possession). These cases are not applicable to the situation at hand.

Plaintiff also relies on a decision of the Supreme Court of the United States for the proposition that "evidence of an employer's discriminatory attitude *in general* is relevant and

20

admissible to prove discrimination." (Doc. 114 at 10–11 (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713–14 n.2 (1983)).)  The *Aikens* Court did not make such a broad statement, however, and was not addressing an evidentiary question in any case.  Rather, the Court merely summarized the evidence the plaintiff had presented for his prima facie case, including the excellence of the plaintiff's own record as an employee, the multiple people who had been promoted above him, and that the person who made the decision to promote others above the plaintiff "had made numerous derogatory comments about blacks in general and [the plaintiff] in particular."  *See Aikens*, 460 U.S. at 713 n.2.  Based on this summary, the Supreme Court said that it would not have been reversible error for the district court to have made a finding of discrimination based on that evidence.  *Id.*  This Court sees no support in *Aikens* for a general rule that evidence of discrimination by some people within an entity is admissible to show that other, unconnected people within the entity engaged in illegal discrimination.

Given the distance in time and the lack of identity between the decisionmakers in *Harris* and *King* and in Plaintiff's case, the Court concludes *Harris* and *King* are not similar enough to Plaintiff's case to be admissible for a proper purpose under Rule 404(b).  Further, even if the *Harris* or *King* lawsuits did have any relevance, the danger of unfair prejudice to Defendant or of misleading the jury would substantially outweigh the probative value of these other lawsuits under Rule 403.

Finally, Plaintiff asserts *Harris* and *King* are relevant to his claims for punitive damages and willful violation of the ADEA, as well as to Defendant's good-faith affirmative defenses. (Doc. 114 at 10–11.)  Plaintiff does not explain in what this relevance consists or identify the facts of consequence to Plaintiff's action that would be made more or less probable by the *Harris* and *King* decisions.  In addition, as stated above, the danger of unfair prejudice to Defendant or of

misleading the jury would substantially outweigh the probative value of these other lawsuits under Rule 403.

Defendant's third motion in limine (Doc. 106) will be **GRANTED**. Plaintiff shall not introduce evidence or make arguments or references to the NLRB Decision, *Harris*, or *King*.

### 4. Defendant's Fourth Motion: Plaintiff's Unemployment Documents

Defendant moves to exclude evidence, argument, and references to Plaintiff's claim for unemployment benefits or the documents associated with his unemployment claim. (Doc. 107.) Defendant notes that Plaintiff has listed such documents on his Amended Exhibit List. (*Id.* at 1 (citing Docs. 107-1–107-4 (containing, among other statements, findings that there was no evidence of willful misconduct by Plaintiff and insufficient evidence of work-related misconduct by Plaintiff).) Defendant argues these documents are inadmissible under Tennessee law and Sixth Circuit precedent. (*Id.* at 3–4.) Defendant relies on Tennessee Code Annotated § 50-7-304(k), which provides that unemployment-compensation findings are not conclusive in any other action. (*Id.* at 3.) Defendant also relies on decisions, both within and outside of the Sixth Circuit, excluding evidence of unemployment hearings and reports. *See, e.g.*, *Reed v. Inland Intermodal Logistics Servs. LLC*, No. 09-2607, 2011 WL 4565450, at *8 (W.D. Tenn. Sept. 29, 2011) ("The Sixth Circuit has held that [Tennessee Department of Labor] reports are inadmissible in discrimination litigation because they are the products of 'quick and inexpensive hearings' with different standards of proof than civil trials.") (quoting *Pascual v. Anchor Advances Prod., Inc.*, 117 F.3d 1421, 1997 WL 397221, at *4 (6th Cir. Jul. 10, 1997) (Table) (affirming the exclusion of unemployment decision and noting such decisions may be admitted into evidence but normally should not be).) In the alternative, Defendant argues the documents are irrelevant under Rule 401 and excludable under Rule 403. (*Id.* at 4–5.)

Plaintiff responds that the exhibits in question "include . . . information concerning CVS's alleged reasons for firing Plaintiff" and asserts that he "has a right to bring before the jury any documents or testimony related to CVS's motive for the actions Plaintiff alleges were discriminatory and/or retaliatory." (Doc. 114 at 12–13.) Plaintiff's response cites no legal authority other than Rule 403 and does not engage with Defendant's arguments or authority regarding the general inadmissibility of unemployment-compensation reports. (*See id.*)

Plaintiff is incorrect in asserting that he has a right to introduce any evidence as long as it is relevant. A party's right to introduce relevant evidence is limited by the Federal Rules of Evidence and other applicable law. *See* Fed. R. Evid. 402. ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court.") Plaintiff has not attempted to distinguish the statute or cases Defendant cites regarding the inadmissibility of unemployment-compensation documents. Merely asserting the documents are relevant is not enough in the face of Defendant's properly supported argument. Given the "quick and inexpensive" nature of unemployment-benefit proceedings, as well as the focus of the unemployment office on the conduct of the employee, rather than the conduct of the employer, the documents are not admissible. *See Pascual*, 117 F.3d 1421, 1997 WL 397221, at *4; *see also* Tenn. Code Ann. § 50-7-304(k).

Defendant's fourth motion in limine (Doc. 107) will be **GRANTED**. Plaintiff shall not introduce evidence or make arguments or references to Plaintiff's claim for unemployment benefits or the documents associated with his unemployment claim.

23

### 5.    Defendant's Fifth Motion: Other Acts

Defendant moves to exclude evidence, argument, and references to alleged "other acts" or "me too" evidence, unless Plaintiff first receives a favorable ruling from the Court outside the presence of the jury. (Doc. 108.) Defendant notes that Plaintiff has listed witnesses whose areas of testimony are described as "CVS's pattern of age discrimination after witnessing other employees be terminated because of their age" and "CVS's practice of floating and harassing older pharmacists." (*Id.* at 1 (quoting Doc. 108-1 at 5, 7–9).) Defendant argues that this testimony would be irrelevant and unduly prejudicial. (*Id.* at 2.)

Plaintiff responds that the evidence is relevant and admissible under Rule 404(b) and Rule 406, and that it is relevant to Plaintiff's claim of willful misconduct by Defendant, his claim for punitive damages, and Defendant's "good faith" defenses. (Doc. 114 at 13–17.)

Defendant's motion and Plaintiff's response discuss specific and complex principles of law, but only discuss the evidence Defendant seeks to exclude in generalities. Defendant cites sixteen paragraphs of Plaintiff's disclosure of potential witnesses (Doc. 108 at 1 (citing Doc. 108-1 at 5, 7–9)), but it mentions only one witness by name or with specifics about the nature of his testimony, and that in a single footnote (*Id.* at 6 n.2). Defendant has thus not provided the Court with enough information to apply the relevant standards and reach a conclusion. However, Defendant has shown enough for the Court to conclude that this category of testimony has the potential to contain evidence that may not be relevant and as to which any probative value would be substantially outweighed by the danger of unfair prejudice to Defendant. Therefore, the Court will **GRANT IN PART** Defendant's fifth motion (Doc. 108) to the extent it seeks a requirement that Plaintiff bring "me too" or "other acts" evidence to the attention of the Court outside the

presence of the jury and obtain a ruling on the specific testimony to be offered before introducing the matter to the jury.

### 6. Defendant's Sixth Motion: Comparators

Defendant's sixth motion in limine asserts that, "[t]o establish his prima facie claims of age . . . discrimination in this matter, Plaintiff must demonstrate that Defendant[] treated him less favorably than similarly situated individuals who are not members of the protected class." (Doc. 109 at 1 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).) Defendant then asks the Court to exclude evidence, argument, and references to "non-similarly situated employees who are not valid comparators." (*Id.*) Defendant argues there are no valid comparators for Plaintiff's prima facie case, arguing that Wooldridge, the other staff pharmacist at the Tellico store, is not a valid comparator because Wooldridge did not "engage[] in similar conduct as Plaintiff." (*Id.* at 1, 3–4.) While the "Legal Standard" section of Defendant's motion discusses Rules 401, 402, and 403 of the Federal Rules of Evidence, his motion does not apply these or any other Rules of Evidence to the substance of his request.

Plaintiff responds that Wooldridge "had essentially the same job as Plaintiff, and he worked in the same store under the same policies with the same reporting structure." (Doc. 114 at 17.) Wooldridge and other unnamed employees were also "younger than Plaintiff . . . and . . . made no complaints about age discrimination." (*Id.*) Wooldridge was not made a floater pharmacist, disciplined, suspended, or fired. (*Id.* at 17–18.) Plaintiff also denies engaging in any of the misconduct Defendant accuses him of and on the basis of which Defendant seeks to distinguish Wooldridge. (*Id.* at 17.) Finally, Plaintiff asserts that evidence of Defendant's "more favorable treatment of other younger pharmacists in Plaintiff's reporting structure who were outside his

protected class and who did not complain about discrimination" is relevant and admissible. (*Id.* at 18.)

Before addressing the merits of Defendant's motion, the Court pauses to note that it rests on two mistaken legal premises. First, Defendant asserts that one of the elements of Plaintiff's prima facie case is to show Defendant treated Plaintiff "less favorably than similarly situated individuals who are not members of the protected class." (Doc. 109 at 1 (citing *McDonnell Douglas*, 411 U.S. 792).) However, as the Court explained in ruling on Defendant's motion for summary judgment, the fourth element of Plaintiff's prima facie case is not limited to whether similarly situated individuals were treated more favorably than Plaintiff. (*See* Doc. 119 § III(C)(1).) Rather, it requires a showing of "circumstances that support an inference of discrimination," which may include, but are not limited to, evidence of more favorable treatment of a similarly situated, non-protected employee. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020).

Second, Defendant assumes Plaintiff will be required to prove his prima facie case under the *McDonnell Douglas* burden-shifting framework at trial. (*See* Doc. 109 at 1 (citing *McDonnell Douglas*, 411 U.S. 792).) However, "when the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case" and the case goes to trial, "the *McDonnell-Burdine* presumption 'drops from the case' and 'the factual inquiry proceeds to a new level of specificity.'" *Aikens*, 460 U.S. at 714–15 (internal citation omitted) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 & n.10 (1981)). Thus, the question at trial will be whether Defendant illegally discriminated against Plaintiff. The jury will be allowed "to consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue whether the defendant's articulated legitimate, nondiscriminatory reason for the adverse

employment action is pretextual." *Bilski v. McCarthy*, 790 F. App'x 756, 762 (6th Cir. 2019). But the jury will not be tied to the formalistic structure of the *McDonnell Douglas* framework, which distinguishes this case from the cases Defendant cites on comparators, all of which come from cases at the summary-judgment stage. (*See* Doc. 109 at 1, 3–4, and cases cited therein.)

Turning to the merits of Defendant's motion, Defendant has failed to show the Court it should exclude comparator evidence regarding Wooldridge or other employees. First, Defendant has not argued or shown such evidence is excludable under any of the Federal Rules of Evidence. Second, as Plaintiff points out (Doc. 114 at 17), Wooldridge's situation is similar enough to Plaintiff's for information about Wooldridge's employment to be relevant to whether Plaintiff was discriminated or retaliated against. Wooldridge held the same position as Plaintiff, in the same store, and with the same higher supervisors. He was younger than Plaintiff and did not complain of age discrimination, and he was apparently neither transferred to a floater position, nor suspended, nor warned, nor terminated. Third, Defendant's argument that Wooldridge did not engage in similar conduct as Plaintiff is unpersuasive (Doc. 109 at 4), as Defendant does not identify any conduct by which to distinguish the two (*see id.*).[4] Fourth, as to other allegedly

---

[4] Although Defendant does not identify Plaintiff's allegedly distinguishing conduct, it does list the three adverse employment actions at issue: (1) Plaintiff's transfer to a floater position, (2) the October 2015 suspension and final warning, and (3) Plaintiff's termination. (*See id.*) First, Defendant does not allege Plaintiff's transition to a floater position to have been based on any conduct by Plaintiff. (*See* Doc. 81 at 14 (Defendant argues Plaintiff was transferred to floater position based on policy that new graduates could not be floaters).) Therefore, Wooldridge's alleged lack of similar conduct does not distinguish him from Plaintiff as to the transfer. Second, Plaintiff denies that the morale survey and October 2015 discipline were the result of any of his conduct, at least aside from his complaints of age discrimination, and the Court found in ruling on Defendant's motion for summary judgment that Plaintiff had met his burden to show the morale survey could have been a pretext for discrimination. (*See* Doc. 119 at 24.) Again, therefore, Wooldridge's alleged lack of similar conduct does not distinguish him from Plaintiff as to the October 2015 discipline. Third, as to Defendant's reason for terminating Plaintiff, the Court previously found a genuine issue of fact as to whether other employees completed customer surveys without adverse consequences, making an adequate showing that the customer surveys

27

improper comparators, Defendant has not identified them or provided any specifics about how their situations differ from Plaintiff's.

Because Defendant has not shown grounds for the exclusion of evidence regarding Wooldridge or other unnamed comparators, Defendant's sixth motion in limine (Doc. 109) will be **DENIED**.

### 7. Defendant's Seventh Motion: Opioid Epidemic and Prescriptions

Defendant moves to exclude evidence, argument, and references to the opioid epidemic or the filling of opioid and other controlled-substance prescriptions by Defendant, unless Plaintiff first receives a favorable ruling from the Court outside the presence of the jury. (Doc. 110.) Defendant argues these matters are irrelevant because Defendant "never disciplined Plaintiff for his role in filling opioids or any controlled substances and did not terminate him for any such conduct." (*Id.* at 3.) In the alternative, Defendant argues the evidence should be excluded as unfairly prejudicial, misleading, and confusing, in that it would invoke the jury's passion and sympathy. (*Id.* at 4.)

Plaintiff responds that it is his theory that Defendant "preferred younger pharmacists in part because they were presumed more willing to accept fraudulent 'pill mill' prescriptions for opioids and other addictive controlled substances." (Doc. 114 at 18.) Plaintiff alleges he refused to fill such prescriptions, but his younger colleagues and the younger pharmacists who replaced him did fill them. (*Id.*) Plaintiff further asserts that both Wooldridge and the front-store manager, Plemons, "routinely told customers whose questionable prescriptions Plaintiff refused to fill to return to the pharmacy when Plaintiff was not working to obtain the desired controlled substances,"

---

were a pretext for discrimination. (*See id.* at 25–26.)

28

with the goal of increasing Defendant's sales. (*Id.* at 7.) Plaintiff therefore argues evidence regarding opioids and controlled-substance prescriptions is relevant in that it tends to show Defendant's motive and intent in discriminating against Plaintiff. (*Id.* at 18.) Plaintiff argues any undue prejudice against Defendant could be cured with a limiting instruction. (*Id.* at 18–19.)

The Court will first consider evidence regarding the filling of opioid and other controlled-substance prescriptions by Defendant, and will then consider evidence regarding the opioid epidemic in general.

Plaintiff has articulated a way in which evidence about the filling of opioid and other controlled-substance prescriptions by Plaintiff and by Defendant's other pharmacists could be relevant at trial. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Defendant argues evidence of the filling of opioid and controlled-substance prescriptions is irrelevant because Defendant did not discipline Plaintiff for filling such prescriptions. But Plaintiff's theory comes at the question of opioid prescriptions from the other direction. Plaintiff argues the evidence is relevant because Defendant in a sense *did* discipline Plaintiff for conduct related to the filling of such prescriptions—it was just for his unwillingness to fill such prescriptions, rather than for his filling of them. Plaintiff's theory further posits that the willingness to fill such prescriptions is linked to a pharmacist's age, which could make the filling or non-filling of such prescriptions a fact of consequence to this age-discrimination action. Plaintiff's theory is sufficient to show relevance for the evidence, provided that the pharmacists in question are closely enough related to Plaintiff in the reporting structure that their practices would bear on the decisions of the decisionmakers in Plaintiff's case.

29

Beyond that scope, the practices of Defendant's pharmacists would lose their relationship to the facts of consequence in this action. The Court will therefore **GRANT** the motion (Doc. 110) **IN PART** as to evidence regarding pharmacists so remote from Plaintiff in the reporting structure that their practices would not bear on the decisions of the decisionmakers in Plaintiff's case. The Court does not have enough information to draw this line more precisely. The Court expects the parties to discuss any questionable evidence in advance and bring the matter to the Court's attention at an appropriate time, outside the presence of the jury, if they cannot agree.

The Court must next consider Defendant's alternative argument for exclusion of evidence about the filling of opioid and other controlled-substance prescriptions: that such evidence would be unfairly prejudicial, misleading, and confusing. (Doc. 110 at 4.) Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403.

Defendant's argument remains at a general level: that "[p]utting these issues before the jury would most certainly invoke the jury's passion and sympathy, no matter the cautionary instructions provided." (Doc. 110 at 4.) Once evidence of the filling of opioid prescriptions is limited to pharmacists whose conduct could have relevance to the decisionmakers in Plaintiff's case, the Court does not agree. The probative value of such evidence, limited as explained above, is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Therefore, the Court will **DENY** the motion (Doc. 110) **IN PART** as to evidence about the filling of opioid and other controlled-substance prescriptions by Plaintiff and other of Defendant's pharmacists who were close enough to Plaintiff in the reporting structure that their practices would bear on the decisions of the decisionmakers in Plaintiff's case.

The Court turns next to evidence about the opioid epidemic in general. Plaintiff has not articulated any way in which evidence about the opioid epidemic in general could make any facts of consequence to his claims more or less probable. In addition, to the extent evidence about the opioid epidemic in general could have any marginal probative value, the Court finds that it would be substantially outweighed by the danger of unfair prejudice against Defendant, as a supplier of opioids and other controlled substances. Accordingly, the Court will **GRANT** the motion (Doc. 110) **IN PART** to the extent it addresses evidence about the opioid epidemic in general, unconnected to the filling of prescriptions by Defendant's pharmacists, as described above.

### 8. Defendant's Eighth Motion: Improperly Disclosed Witnesses

Defendant moves to exclude the testimony of several potential witnesses identified by Plaintiff. (Doc. 111.) Defendant claims Plaintiff has not provided any contact information for thirteen of these witnesses and he has provided only phone numbers, but not addresses, for four more.[5] (*Id.* at 2–3.) In addition, Defendant argues Plaintiff was late in identifying one of the witnesses, Jesse Lovingood. (*Id.* at 3.) Defendant asks for the exclusion of these witnesses under Rule 37(c)(1) of the Federal Rules of Evidence. (*Id.* at 2–3.)

Plaintiff opposes the motion but offers no legal authority to support his position. (Doc. 114.) As to the thirteen individuals without contact information, Plaintiff asserts he does not have the information and Defendant is in a better position to locate these witnesses, as they are all former employees of Defendant. (*Id.* at 19.) Plaintiff argues his failure to locate the witnesses is both harmless and substantially justified. (*Id.*) As to the four potential witnesses with no listed

---

[5] Defendant does not identify the inadequately disclosed witnesses by name or by paragraph number. (*See* Doc. 111 at 2.) There are, in fact, five individuals as to whom Plaintiff gives only a phone number, making a total of eighteen witnesses on Plaintiff's witness list with incomplete information. (*See* Doc. 111-1 ¶¶ A(11), (17), (18), B(21), (22).)

31

addresses, Plaintiff asserts that he does not have the missing information and Defendant has not been harmed because it could have used the phone numbers to contact these individuals. (*Id.* at 19–20.)

At the beginning of discovery, each party must give the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). The deadline for the parties to do so in this case was February 14, 2019. (Doc. 62 ¶ 5(c).) Timely supplementation is required if additional or corrective information becomes available. Fed. R. Civ. P. 26(e)(1)(A). Before trial, each party must give the other parties a witness list containing "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises." Fed. R. Civ. P. 26(a)(3)(A)(i). The deadline for the parties to do so in this case was February 10, 2020. (Doc. 62 ¶ 5(e).)

"If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the "potentially sanctioned party" to demonstrate harmlessness. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271–72 (6th Cir. 2010). "[T]he advisory committee note to Rule 37 'strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 637 (6th Cir. 2007) (quoting *Vance ex rel Hammons*, No. 98-5488, 182 F.3d 920 (Table), 1999 WL 455435, at *5 (6th Cir. 1999)).

Plaintiff's witness list includes thirteen individuals as to whom Plaintiff lists no contact information. (Doc. 111-1 ¶¶ A(14), (16), B(19), (20), (23–28), (32–34).) Two of these individuals are designated as witnesses Plaintiff "Will Call," and the other eleven are designated as witnesses Plaintiff "May Call." (*Id.*) Jesse Lovingood is one of the "May Call" witnesses. (*Id.* ¶ B(33).) Plaintiff's witness list also includes five individuals as to whom Plaintiff provides only a phone number. (*Id.* ¶¶ A(11), (17–18), B(21–22).) Three of these individuals are designated as witnesses Plaintiff "Will Call," and the other two are designated as witnesses Plaintiff "May Call." (*Id.*)

The burden is on Plaintiff to show his failure to provide addresses and phone numbers for these eighteen individuals is harmless or substantially justified. *See R.C. Olmstead*, 606 F.3d at 271–72. Thirteen of these potential witnesses being Defendant's former employees, on its own, does not satisfy Plaintiff's burden. Nor does it satisfy Plaintiff's burden for him to simply give Defendant the phone numbers for five more potential witnesses.

To begin, it appears unlikely Plaintiff actually expects to call any of these individuals as witnesses. This case has been scheduled for a trial on the merits since January 31, 2019. (*See* Doc. 62 ¶¶ 1, 8.) Crediting Plaintiff's assertion that he has given Defendant all the information he has about these individuals, this means Plaintiff either has not communicated with these individuals regarding this case or he has communicated with them without getting their contact information. In either case, the likelihood is low that Plaintiff has a realistic expectation of calling these individuals as witnesses, notwithstanding that five of them are listed as witnesses Plaintiff "will call." (Doc. 111-1 ¶¶ A(11), (14), (16–18).)

Next, the Court notes that it is certainly possible Defendant has information in its employment files from which it could have at least started the process of tracking down the thirteen named former employees. Plaintiff is also correct that Defendant could have called the phone

numbers Plaintiff gave for the other five individuals. "Harmlessness, however, is the key under Rule 37, not prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). Requiring Defendant to track down eighteen individuals, in the absence of proper disclosures from Plaintiff and with the accompanying unlikelihood Plaintiff actually intends to call any of these individuals as witnesses, would have caused harm to Defendant in the form of needless expenditure of time and money.

Defendant asks to exclude Lovingood on the additional ground that Plaintiff failed to disclose Lovingood as a witness in a timely fashion. (Doc. 111 at 3.) Plaintiff does not respond to this argument. (*See* Doc. 114 at 19–20.) Plaintiff did not disclose Lovingood in his initial disclosures under Rule 26(a)(1)(A)(i) but included Lovingood on his witness list under Rule 26(a)(3)(A)(i).[6] (*See* Doc. 111-1, 111-2.) Plaintiff has not shown either substantial justification or harmlessness for this failure. *See R.C. Olmstead*, 606 F.3d at 271–72.

Defendant's eighth motion in limine (Doc. 111) will be **GRANTED**. Plaintiff will not be allowed to use the witnesses at Paragraphs 11, 14, 16–28, or 32–34 of Sections A and B of Plaintiff's Witness and Exhibit List (Doc. 111-1) to supply evidence at trial.

### 9. Defendant's Ninth and Tenth Motions: Disability and Accommodation

Defendant moves to exclude evidence, argument, and references to Plaintiff's alleged disability, his medical records, or his alleged request for a stool as a reasonable accommodation. (Docs. 112, 113.) Plaintiff opposes both motions, arguing the evidence is relevant to his disability claims under the ADA. (Doc. 114 at 20–22.)

---

[6] Neither party has identified a supplemental disclosure under Rule 26(e)(1)(A) that listed Lovingood.

34

Since Defendant filed these motions in limine, the Court dismissed Plaintiff's disability claims under the ADA. (*See* Doc. 120.) As a result, evidence regarding Plaintiff's alleged disability, his medical records, or his alleged request for a stool as a reasonable accommodation is irrelevant and inadmissible. *See* Fed. R. Evid. 401, 402. Defendant's ninth and tenth motions in limine (Docs. 112, 113) will therefore be **GRANTED**.

## III.   <u>CONCLUSION</u>

Plaintiff's consolidated motions in limine (Doc. 103) will be **GRANTED IN PART** and **DENIED IN PART**. The consolidated motions will be **GRANTED** as to Plaintiff's first, third, ninth, tenth, and thirteenth motions in limine. Defendant shall not introduce evidence or make arguments or references to Plaintiff's dismissed claims or regarding Plaintiff's assets, investments, income, or losses, including without limitation his real property, his investments, his family's farm, the Garren Stables business, or his horses. Plaintiff may ask leading questions on direct examination of the witnesses he has identified in his third motion in limine (Doc. 103 at 2–3). The Court will apply Rule 615 at the trial. If a party believes the other party has opened the door to otherwise inadmissible evidence, the party seeking to introduce the evidence must raise the matter with the Court outside the presence of the jury before suggesting the evidence to the jury by any means. Plaintiff's consolidated motions in limine will be **DENIED** as to Plaintiff's fifth motion in limine and **DENIED AS MOOT** as to Plaintiff's second, fourth, sixth, seventh, eighth, eleventh, and twelfth motions in limine.

Defendant's first, third, fourth, eighth, ninth, and tenth motions in limine (Docs. 104, 106, 107, 111, 112, 113) will be **GRANTED**. Plaintiff shall not introduce evidence or make arguments or references to the news or internet articles identified as Plaintiff's Proposed Exhibits 17, 70–74, and 81; the NLRB Decision or the *Harris* or *King* lawsuits, and Plaintiff's claim for unemployment

35

benefits or the documents associated with his unemployment claim; Plaintiff's alleged disability or medical records; or Plaintiff's alleged request for a stool as a reasonable accommodation. Plaintiff will not be allowed to use the witnesses at Paragraphs 11, 14, 16–28, or 32–34 of Sections A and B of Plaintiff's Witness and Exhibit List (Doc. 111-1) to supply evidence at trial.

Defendant's second, fifth, and seventh motions in limine (Docs. 105, 108, 110) will be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall not introduce evidence or make arguments or references to Plaintiff's financial condition, the location of Defendant's headquarters, or Defendant's counsel's locations, size, or specialty. Plaintiff shall bring "me too" or "other acts" evidence to the attention of the Court outside the presence of the jury and obtain a ruling on the specific testimony to be offered before introducing the matter to the jury. Plaintiff shall not introduce evidence or make arguments or references to the opioid epidemic in general or the filling or non-filling of opioid and other controlled-substance prescriptions by pharmacists so remote from Plaintiff in Defendant's reporting structure that their practices would not bear on the decisions of the decisionmakers in Plaintiff's case.

Defendant's sixth motion in limine (Doc. 109) will be **DENIED**.

**An appropriate order will enter.**

/s/ _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

36